UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, N.A. | § | |
| | § | |
| v. | § | Cause No. 5:12-cv-119 |
| | § | |
| DATATREASURY CORPORATION | § | |

MEMORANDUM OPINION AND ORDER

Now before the Court are cross motions for summary judgment (and one related motion to dismiss) in a breach of license contract dispute between Plaintiff JPMorgan Chase Bank, N.A. (JPMC[1]) and Defendant DataTreasury Corporation (DTC). The controversy involves JPMC's lump sum payment for the use of DTC's patented technology. The license agreement (License Agreement) governing that use contains a most favored license clause (MFL clause[2]), granting JPMC the right to "any and all more favorable terms" in comparable later licenses of the patents. JPMC contends that DTC breached the License Agreement by, first, failing to provide JPMC notice of later license agreements granting use of the same patents and by, second, refusing to grant JPMC the benefit of the more favorable pricing made available in one or more of the later license agreements.

JPMC seeks summary judgment and a ruling that DTC owes JPMC the benefit of the price term in a more favorable subsequent license agreement, including a refund of the difference between the price terms. In the same motion, it also seeks summary judgment finding that DTC's affirmative defenses and counterclaims are all without merit. JPMC also filed a separate motion to dismiss DTC's counterclaims. The Court considers the motions

---

[1] For the purposes of this Order, "JPMC" includes J.P. Morgan Chase & Co., JPMorgan Chase Bank, and Bank One Corporation (BOC), which executed a combination of license agreements and settlement and release agreements. The documents are explained below.
[2] Also occasionally referred to as a "most favored nations" (MFN) clause.

together.   DTC opposes with several arguments, many of which are repeated in its three partial summary judgment motions on (1) the applicability of the MFL clause; (2) its affirmative defense of waiver; and (3) its affirmative defense of the statute of limitations.

Having thoroughly considered the parties' briefs and oral argument, the terms and structure of the agreements in dispute, and the applicable law the Court **DENIES IN PART** and **GRANTS IN PART** JPMC's motion for summary judgment (Doc. No. 110) and **DENIES** DTC's motions for partial summary judgment (Doc. Nos. 111, 117 and 118). JPMC's motion to dismiss DTC's counterclaims (Doc. No. 119) is **DENIED** as **MOOT**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 28, 2005, JPMC and BOC each entered into settlement agreements with DTC resolving patent infringement claims arising from certain of DTC's patents.  The parties also entered into the License Agreement, allowing JPMC to use DTC's patents for a total consideration of $70 million.  Although the $70 million altogether was a lump-sum payment for unlimited use of DTC's patents and not a "running royalty" paid per-use, the parties agreed to payment in installments: $25 million in 2005 under the BOC Settlement and Release Agreement; $5 million in 2005 under the JPMC Settlement and Release Agreement; and $5.5 million each year from 2006 to 2011, with a final $7 million payment in 2012. Together, these payments are the full consideration for JPMC's use of DTC's patents.[3]

---

[3] "In consideration of the full payment of the total compensation under the terms set forth in the Settlement and Release Agreements between DTC and JPMC and between DTC and Bank One Corporation (having merged into and now known as JPMorgan Chase & Co.) (collectively, 'Settlement and Release Agreements'), each of which is incorporated by reference herein, DTC hereby grants to JPMC and its Subsidiaries a fully paid up, irrevocable, nontransferable, nonexclusive license, to make, have made, use, sell, offer to sell, import, lease, distribute, provide or have provided Licensed Instrumentalities throughout the world." DataTreasury Patent License Agreement, Ex. 1 to JPMC's earlier, adjudicated, Motion for Partial Summary Judgment (Doc. No. 42), at 3 ("2.1 Grant of License by DTC to JPMC").

Section 9 of the License Agreement contains the MFL clause at issue, which states:

**9.      Most Favored Licensee**

If DTC grants to any other Person a license to any of the Licensed Patents, it will so notify JPMC, and JPMC will be entitled to the benefit of any and all more favorable terms with respect to such Licensed Patents.  JPMC agrees that $.02 to $.05 per Transaction is a reasonable royalty under the license granted herein, and JPMC makes no representation as to what pro-rata share of such royalty is attributable to any portion or sub-part of such Transaction.  The notification required under this Section shall be provided by DTC to JPMC in writing within thirty (30) days of the execution of any such third party license and shall be accompanied by a copy of the third party license agreement, which may be redacted by DTC if necessary to comply with any judicial order or other confidentiality obligation.  The MFN shall be applied within thirty (30) days from the date this provision is recognized in accordance with Section 10.7.

(*See* Doc. No. 42, Ex. 1, at 7.)  Section 10.1 requires notices to be by fax and express delivery to both JPMC's Office of General Counsel and to outside counsel at Skadden, Arps, Slate, Meagher & Flom LLP (Skadden).  Section 10.7 is a choice of law and forum clause requiring that the License Agreement be construed under Texas law, and that jurisdiction and venue exist solely in the United States District Court for the Eastern District of Texas, Texarkana Division.  (*See* Doc. No. 42, Ex. 1, at 9.)

After entering into the License Agreement, DTC separately entered into several other licensing agreements (the Subsequent Licenses) involving the same patents but at different lump sum price terms.  Notably here, on October 1, 2012, DTC entered into such a license agreement with non-party Cathay General Bancorp (Cathay).  The lump sum price term for Cathay's sole use (i.e., not extending to any after-acquired entities) was $250,000.  However, as discussed below, the full consideration under the Cathay license also required additional payments under an established formula for any additional entities Cathay acquired later.  No such provision exists in the JPMC-DTC License Agreement.

On November 29, 2012, JPMC filed the instant lawsuit for breach of contract against DTC, alleging that DTC had failed to notify JPMC of the Subsequent Licenses and that "many of the Subsequent Licenses were granted on terms substantially more favorable than those afforded to JPMC."  Complaint at 4.  Of note, the Cathay license agreement had not been noticed to JPMC, but was produced after JPMC initiated this lawsuit.

In its instant motion for summary judgment (Doc. No. 110), JPMC seeks the benefit of the isolated price term granted to Cathay,[4] and summary judgment on DTC's affirmative defenses and counterclaims.  To obtain that benefit, JPMC contends that its $70 million lump-sum price term must be retroactively replaced with Cathay's $250,000 lump-sum price term and the balance refunded.  JPMC also moved to dismiss DTC's counterclaims (Doc. No. 119).

DTC has filed three cross-motions for partial summary judgment on: (1) its affirmative defense of the statute of limitations (Doc. No. 111); (2) its affirmative defense of waiver (Doc. No. 117); and (3) the applicability of the MFL clause and finding of no breach as to certain claims (Doc. No. 118).  The Court takes up all of the cross-motions together.[5]

---

[4] "After entering into the JPMC License Agreement, DTC licensed its patents to more than sixty additional entities [ ]. *For purposes of this summary judgment, JPMC seeks the benefit of the more favorable price and other terms of the Cathay license.*"  (Doc. No. 110 at 1 n. 1) (emphasis added).  Although JPMC also refers to a total of 46 licenses that DTC issued with more-favorable terms, it acknowledges it can only seek the benefit "of the single most favorable license."  (Doc. No. 110 at 1 n.1.)  Thus, the Court will only consider JPMC's claims with reference to the Cathay license.

[5] Both parties' pleadings unnecessarily repeat similar arguments in separate motions; because the Court will rule on JPMC's motion for summary judgment, it will not consider the different standard for a motion to dismiss.  Further, neither party has consistently provided clear Statements of Undisputed Material Facts as required by E.D. Tex. Local R. CV-56(a) and responses thereto under Local R. CV-56(b), though DTC has done so in part through incorporating by reference statements of fact proffered in other documents.  *See Willette v. City of Waterville*, 516 F. Supp. 2d 139, 140-42 (D. Me. 2007) (generally discussing the problems associated with failure to follow summary judgment procedural rules).  The Court will consider each major point, but will combine duplicative arguments for simplicity and brevity.

## II.      STANDARD

Rule 56(a) requires the issuance of summary judgment "if there is no genuine issue as to any material fact," and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id*. at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *Id*. at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1862 (2014) (per curiam); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## III.      SUMMARY JUDGMENT AS TO BREACH AND DAMAGES

JPMC's underlying complaint is that DTC breached the License Agreement's MFL clause. The elements of this breach of contract claim are: (1) the existence of a valid contract; (2) performance by JPMC; (3) breach of the agreement by DTC; and (4) damages sustained as a result of DTC's breach. *See B&W Sup. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Only the third and fourth elements are in dispute.

On that framework, JPMC attempts to build on the Court's March 6, 2014, Order construing parts of the MFL clause (Doc. No. 104).[6]  There, the Court interpreted the first two sentences of the MFL clause under Texas state law.  JPMC relies on that decision and DTC distinguishes it.  The Court will restate portions of that decision herein.  Otherwise, this decision supersedes the March 6, 2014, Order in its entirety.

The Court interprets the first two sentences of the MFL clause to mean that (1) there is no limit on what *type* of term can be substituted via the MFL clause, meaning the MFL clause in this case grants JPMC the benefit of any term in a subsequent license agreement that is more beneficial than the comparative term in the License Agreement.  Additionally, (2), the second sentence of the MFL clause unambiguously provides JPMC's representation of a reasonable royalty rate in exchange for inclusion of the MFL clause.  *See Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (encouraging courts to consider the business purpose a contract serves).  The second sentence has no bearing here and neither party has argued otherwise.

On this construction, JPMC essentially seeks a ruling as a matter of law that DTC owes JPMC the benefit of the more favorable price term of the $250,000 lump sum price Cathay paid for the use of DTC's same patents.  Thus, JPMC seeks reformation of the License Agreement to reflect a price term of $250,000 for JPMC's use of the patents and a refund of $69,750,000 from the $70 million it tendered as a lump-sum payment.  However, JPMC ignores the remainder of the Cathay license's full term of *consideration*.  In that light, the Court now analyzes the elements of *breach* and *damages*.

---

[6] Issued on JPMC's previous motion for partial summary judgment (Doc. No. 42).

### A.     Breach

JPMC contends that DTC breached the License Agreement when it failed to notify JPMC of the Subsequent Licenses and then refused to give JPMC the benefit of more favorable consideration terms, each required under the MFL clause.  In return, DTC contends in its motion for partial summary judgment regarding applicability of the MFL clause (Doc. No. 118) that the MFL clause is not self-executing and that JPMC would have had to have filed an action for declaratory judgment that the MFL clause applied before it could even proceed with its breach of contract claim.  In addition, DTC asserts in its Response (Doc. No. 130) it did not withhold notice of the Subsequent Licenses, but that JPMC had actual, inquiry or constructive notice of them.  Each of DTC's arguments fails.

### 1.     Whether The MFL Clause Is Self-Executing

DTC refers to the fourth sentence of the MFL clause, which states, "The MFN shall be applied within thirty (30) days from the date this provision is *recognized* in accordance with Section 10.7."  *See* Part I, *supra* (emphasis added).  Section 10.7 provides that Texas law governs and that the sole choice of forum is the Eastern District of Texas, Texarkana Division.  Therefore, DTC contends, the MFL clause required JPMC to have its rights "recognized" in an action for a declaratory judgment before bringing its breach of contract action.  Because it did not, DTC claims, DTC cannot be liable for such a breach.

There is nothing in the plain language of Section 10.7 to suggest such an interpretation.  It merely establishes the choice of law, jurisdiction and venue.  These terms do not require an action for declaratory judgment before seeking enforcement of the MFL clause. *PG&E Gas Transmission v. City of Edinburg*, 59 S.W.3d 225, 228 (Tex. App.—Corpus Christi 2001), *aff'd in part & rev'd in part on other grounds*, *S. Union Co. v. City of*

*Edinburg*, 129 S.W.3d 74 (Tex. 2003) ("If the parties had intended to limit the most favored

nations clause . . . they could have included such a provision in the agreement.").

Moreover, the first sentence of the MFL clause requires DTC to *notify* JPMC upon

granting a license of any of the relevant patents to any other "Person," and that JPMC is

entitled to "any and all more favorable terms" resulting therefrom.   "Some clauses apply

automatically; they purport to give the most favored licensee the benefit of more favorable

terms instantly, as soon as the later license is granted.   These clauses should be enforceable, as

long as the later license is in fact more favorable."   2 Jay Dratler, *Licensing of Intellectual*

*Property*, § 9.03 (footnote omitted).   Here, the plain language of the MFL clause makes its

operation automatic.[7]   DTC's assertion that the MFL clause is not self-executing and that

JPMC was required to seek a declaratory judgment before bringing its breach of contract

action is without merit.

### 2.      Whether DTC Notified JPMC

DTC contends there is a fact issue whether JPMC had notice of the Subsequent

Licenses, and argues that JPMC had actual, constructive or inquiry notice.   DTC's point

appears to be that JPMC received timely notice in one form or another.   JPMC counters that

DTC failed to provide any timely notice whatsoever, and failed to give JPMC the benefit of

more favorable terms it demanded, breaching the License Agreement.

The third sentence of the MFL clause states, "The notification required under this

Section shall be provided by DTC to JPMC in writing within thirty (30) days of the execution

of any such third party license and shall be accompanied by a copy of the third party license

---

[7] DTC also argues that there is a fact issue as to whether the Cathay Agreement is "more favorable."   The Court addresses this issue in the next section on damages.   Regardless, notice under the MFL clause is not conditioned on whether a Subsequent License is "more favorable."

agreement, which may be redacted by DTC if necessary to comply with any judicial order or other confidentiality obligation." *See* Part I, *supra*. This is a clear and unambiguous statement of notice obligations, and is undisputed. In addition, as noted above, Section 10.1 of the License Agreement requires notices to be by fax and express delivery to *both* JPMC's Office of General Counsel and to outside counsel at Skadden.

As the Court has already stated, it limits itself to the issue of the Cathay license. DTC's arguments do not focus on the Cathay license, but broadly address whether JPMC had appropriate notice of some or all of the "Subsequent Licenses," regardless of when each such license was issued or any particularized facts involved in each. Such an attempt is too broad.

With the proper focus in mind, JPMC has submitted competent summary judgment evidence that:

- the Cathay license was executed on October 1, 2012;

- DTC failed to provide notice within 30 days of that date; and,

- in fact, DTC did not notify JPMC of its existence until well after this lawsuit was filed.

(*See* Doc. No. 114-5, Ex. 55 to JPMC's MSJ (email dated February 19, 2013, from Nix Patterson & Roach (counsel to DTC) to JPMC's outside counsel at Skadden, forwarding redacted licenses "that may be disclosed to JPMC")). Aside from the timeliness, the disclosure did not meet the requirement of manner of delivery or independent delivery to both JPMC's outside counsel and inside Office of General Counsel. DTC does not dispute that this was its first disclosure of the Cathay license to JPMC. Accordingly, DTC failed to timely provide actual notice to JPMC of the Cathay license.

DTC nonetheless contends that JPMC either had constructive notice or was on inquiry notice of the Subsequent Licenses in general. It largely argues that JPMC was on constructive

notice of some of the Subsequent Licenses because DTC produced them to JPMC's attorney at Skadden during earlier litigation, who should have disclosed the agreements to JPMC. The problem is that, even if the Skadden attorney received information regarding some of the Subsequent Licenses, it was during discovery in wholly different litigation. Further, that litigation was subject to a protective order, which governed production of the information relating to the Subsequent Licenses. (*See generally* Doc. No. 114-17, Ex. 67 to JPMC's MSJ (Protective Order)). To claim that Skadden should have violated that protective order is untenable. DTC's argument is without merit.

Moreover, again, the Court focuses on the issue of the Cathay license, given that JPMC bases its claim entirely on it out of the entire field of Subsequent Licenses. DTC and Cathay entered into that license on October 1, 2012. (*See* Doc No. 112-13, Ex. 38 to JPMC's MSJ (the Cathay license)). The original complaint in this action was filed on November 29, 2012. *See* Doc. No. 2. Clearly, JPMC had already inquired and still had not been informed of the Cathay license, inasmuch as DTC did not disclose its existence until February 19, 2013. It appears that it was this very conduct that led to the filing of this action. DTC's contentions of alternative notice fail.

There is no genuine dispute of material fact that DTC was required to provide JPMC notice of the Cathay license, but did not. Therefore, regardless whether DTC refused to give JPMC the benefit of any resulting "more favorable" terms, DTC breached the License Agreement by failing to provide the required notice. JPMC is entitled to summary judgment on the issue of breach of contract; DTC's motion for partial summary judgment regarding applicability of the MFL clause (Doc. No. 118) is **DENIED**.

### B.     Damages

Having established the element of breach through DTC's failure of notice, JPMC seeks its ultimate remedy – that its $70 million total lump-sum consideration under the License Agreement should be replaced by the more-favorable price term of $250,000 granted to Cathay under its license agreement.   In other words, JPMC seeks a reformation of the License Agreement's consideration term and a refund of $69,750,000 under the MFL clause.

DTC responds that the MFL clause acts only prospectively, not retroactively as JPMC requests.  DTC next contends that whether Cathay's price term is "more favorable" is an issue of fact and that the $250,000 amount cannot be considered in a vacuum.  It also argues that JPMC must accept *all* of the terms of any subsequent license it considers "more favorable," including any that are better or worse than in the License Agreement.  In this same light, DTC argues that the Cathay license is not comparable to the License Agreement for the purpose of triggering the MFL clause.   Finally, DTC repeats that JPMG cannot obtain a refund for royalties already paid and, even if owed a refund, there is a factual dispute about its amount.

### 1.     Prospective Versus Retroactive Application Of The MFL Clause

The Court must first consider the difference between a lump-sum and a running royalty based license.  The purpose of a most favored licensee clause "is to guarantee that no other licensee will be given the opportunity to use the patent at a more favorable rate." *Epic Sys. Corp. v. Allcare Health Mgmt. Sys., Inc*., 4:02-CV-161-A, 2002 WL 31051023, at *5 (N.D. Tex. Sept. 11, 2002); *Cardinal of Adrian, Inc. v. Amerock Corp.*, 208 U.S.P.Q. 822, 823 (E.D. Mich. 1979), *aff'd*, 216 U.S.P.Q. (369, 370 (6th Cir. 1982); *see also* 2 Jay Dratler, *Licensing of Intellectual Property*, § 9.02[6] ("The purpose of most-favored-licensee clauses is simple: to put the most favored licensee in a position of competitive equality by avoiding

competitive disadvantage."). "Rate" often designates a percentage of selling price, or a "running royalty." *See Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 WL 2795135, at *4–6 (N.D. Cal., July 15, 2008). But a royalty rate simply "means the compensation paid by the licensee to the licensor for the use of the licensor's patented invention." *Hazeltine Corp. v. Zenith Radio Corp.*, 100 F.2d 10, 16 (7th Cir. 1938). Therefore, a lump-sum license also states a royalty rate, in the amount of the lump sum. *Cardinal of Adrian*, 208 U.S.P.Q. at 822–23; 2 Jay Dratler, *Licensing of Intellectual Property*, § 9.02[1] ("A 'royalty rate' may include the right to a fully paid-up license for a lump sum or a lump sum per unit time") (footnotes omitted). Thus, a lump-sum licensee pays a paid-up sum for unlimited use of the patent at the single price instead of a discrete amount for each successive use, as under a running royalty.

The most favored running royalty licensee initially holds the most favorable "rate" when it obtains its license. The initial rate becomes less favored when the licensor later grants a lower rate elsewhere. It is only then that the opportunity to use the patent at a more favorable rate develops (and the most favored licensee becomes disadvantaged). Thus, the damage to the most favored licensee with a running royalty can only occur prospectively. *Epic Sys.*, 2002 WL 31051023, at *6. Accordingly, prospective-only modifications to a running royalty rate guarantee most favored licensee status in that situation.

On the other hand, a lump-sum license is not metered by usage, s*ee Hazeltine*, 100 F.2d at 17–18, because a lump sum license purchases unlimited use for a set price. When the patent holder grants a subsequent licensee a lower lump sum, the most favorable rate becomes the lower, lump-sum amount. However, the disadvantage imposed on the most favored licensee cannot be cured with a substituted running royalty rate going forward because there is no running royalty structure to the license. Therefore, the logic supporting a prospective-

only modification under a running royalty license is inapplicable to a lump-sum situation. There would be no purpose to a most favored licensee clause in a lump-sum license if the most favored licensee could not obtain a more favorable, later-granted lump-sum rate.

Here, in what appears to be an issue of first impression, the parties contemplated the MFL clause to apply where a lump-sum payment could be replaced by a more favorable lump-sum payment.  Certainly, the MFL clause simply states, "If DTC grants to any other Person a license to any of the Licensed Patents, it will so notify JPMC, and JPMC will be entitled to the benefit of any and all more favorable terms with respect to such Licensed Patents."  *See* Part I, *supra*.  If JPMC were to be denied the ability to substitute a later-granted, more favorable payment term, it would render the MFL clause meaningless.  The Court, however, must give meaning to the unambiguous terms of the contract.  *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex. App. – Houston [1st Dist.] 2003, pet. denied) ("Terms in contracts are given their plain, ordinary and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning.").

Therefore, where a licensee with a most favored licensee clause seeks to replace what has become a less-favored lump-sum license payment with a later-granted, more favorable lump-sum payment, the only way to give meaning to the MFL clause is by retroactive substitution of the payment term.  That is the outcome of the parties' contract here.

DTC also asserts that JPMC cannot recover a refund for royalties it has already paid, which reprises its argument that relief under the MFL clause can only apply prospectively. However, the Court's finding here eliminates this argument.  Notwithstanding, DTC also contends that even if retroactive reformation is necessary, there remains a question of fact

over the amount of refund notionally due to JPMC.  That is bound up in the next point the Court considers: what are the actual payment terms under the respective license agreements?

>       **2.      Defining The Proper Term Of _Consideration_**

DTC contends that whether the Cathay license is more favorable is an issue of fact and that its price term cannot be considered in a vacuum.  It argues that the term "any and all more favorable terms" in the MFL clause requires review of every term in a subsequent license agreement so as to determine the net value of _all_ of the terms of the subsequent agreement.  In other words, to determine whether one license agreement is more favorable than another requires an overall assessment of _all_ of the respective terms (_e.g._, the respective sizes of the licensee entities, the remaining effective life of the respective patents, the expected use of the patents by the respective licensees, etc.).

That complex an interpretation is inconsistent with the MFL clause's plain language. Instead, it is simple: JPMC is entitled to a substitution of more favorable _terms_, not to be construed as more favorable overall _licenses_.  The Court must enforce the unambiguous language of the MFL clause as written, and reject DTC's asserted meaning as to the clause's first sentence.  _See PG&E Gas Transmission_, 59 S.W.3d at 228; _Bituminous Cas. Corp._, 110 S.W.3d at 208-09.  Therefore, DTC's broad construction requiring review of virtually every variable in the entire License Agreement is without merit.

Even so, JPMC's claim centers on the essential element of _consideration_[8] in the License Agreement, contending that the license DTC granted to Cathay was more favorable in terms of consideration than DTC granted JPMC.  Moreover, JPMC focuses only on the

---

[8] Under Texas law, "[f]or a contract to exist, there must be an offer, acceptance, and consideration."  _Domingo v. Mitchell_, 257 S.W.3d 34, 39 (Tex. App. – Amarillo 2008, pet. denied) (citing _Harco Energy, Inc. v. Re–Entry People, Inc._, 23 S.W.3d 389, 392 (Tex. App.-Amarillo 2000, no pet.)).

$250,000 amount Cathay paid for its own use of the patents.  Even without considering every other variable in the License Agreement, however, "[w]hether a later license is more favorable [ ] depends upon the *total package of consideration* flowing both ways, not upon any single rate or term in isolation."  2 Jay Dratler, *Licensing of Intellectual Property*, § 9.02[5] (footnote omitted; emphasis added).

The License Agreement defines "consideration."  *See supra*, n.3.  Further, under ¶ 3 ("Payment"): "Consideration paid by JPMC for this license is set forth in, and will be paid in accordance with, the terms provided in the Settlement and Release Agreements."  *See* License Agreement, at ¶ 3.1.  In other words, JPMC's consideration under the License Agreement was a "total package" of past infringement settlements and payments by different entities incorporated by reference to each other.

Cathay's total package of consideration under its license agreement with DTC also consisted of multiple substantive elements under ¶ 3, "**CONSIDERATION**":

3.1  Payment Schedule.  Cathay shall pay or cause to be paid to DTC a one-time payment in the amount of Two Hundred and Fifth Thousand US Dollars (US $250,000.00) wired within five (5) business days of the Effective Date to the account identified in section 3.4.1.

3.2  Additional Payments.  In the event Cathay desires to have the License and Releases set out in sections 2.1, 2.2.1 and 2.2.2 above apply to an Acquired Entity, then Cathay shall make within thirty (30) days of the closing of any transaction relating to an Acquired Entity, an additional payment to DTC wherein such additional payment shall be determined first by calculating the pro rata ration of the total assets of the Acquired Entity at the time of Cathay's merger or acquisition (as the numerator), to the total assets of Cathay on the date prior to the closing of the merger or acquisition (as the denominator); and then multiplying this ratio with the dollar amount set forth in section 3.1 above.  The effective date of any such releases for any Acquired Entity(s) shall be the applicable date of acquisition, so long as the additional payment is made within thirty (30) days from the closing date of the particular acquisition.

Settlement, Release and License Agreement between Cathay and DTC, Ex. 38 to JPMC's Motion for Summary Judgment (Doc. No. 112), at ¶¶ 3.1-3.2.

Under these terms, the Cathay license "total package of consideration" does not simply involve a $250,000 lump-sum payment, but an agreement to pay additional amounts per the established formula for any Cathay after-acquired entity that used DTC's patents.

The Court has already found that replacing one lump-sum consideration term with another pursuant to a most-favored-licensee clause would have to be done retroactively. Because JPMC contends Cathay's license agreement is more favorable under the MFL clause, the Court must consider Cathay's total package of consideration, including its formula for the additional cost for any after-acquired entities using the licensed patents.  That formula for computing any additional cost to JPMC for entities using DTC's patents, but acquired after the 2005 License Agreement, would necessarily also have to be applied retroactively.

Unfortunately, there is no evidence before the Court to support such a computation.  In fact, there is no specific evidence regarding JPMC's acquisitions since 2005 and what use any after-acquired entities have had with DTC's patents.  Including the after-acquired-entity formula would require a denial of summary judgment simply because JPMC seeks *only* a replacement of its $70 million consideration with Cathay's isolated $250,000 term. Moreover, there is also a genuine dispute of material fact because there is no evidence of costs or values required under the formula.  Furthermore, if there were, the computation itself would likely require competing expert testimony and be subject to a fact-finder's review.

Accordingly, the Court finds that a genuine dispute of material fact exists as to the element of damages, Fed. R. Civ. P. 56(a), and must **DENY** JPMC's motion for summary judgment on the issue of simply substituting Cathay's $250,000 lump sum price term for its

$70 million lump sum price term.  That does not mean that JPMC cannot ultimately avail itself of reformed terms under the MFL clause.  However, the parties must address the full terms of consideration under the Cathay license, because that is the particular Subsequent License JPMC has cited in its lawsuit.  At a minimum, the parties will have to determine JPMC's after-acquired entities (post-2005 License Agreement) that have the use of DTC's relevant patents and apply the formula in the Cathay License to determine (1) whether the Cathay Agreement actually provides more-favored terms and (2) if it does, what benefit should accrue to JPMC under the MFL clause.

C.     **Additional Observations As To The MFL Clause**

Having considered these problematic issues, the Court notes that Professor Dratler discusses ways to improve an MFL clause:

> Case law suggests two ways to improve the standard, broadly-drafted clause. The first is to **make specific provision for situations that experience has shown are most likely to cause difficulties**. The most common of these are infringe-ment settlement licenses, cross-licenses, and **lump-sum licenses** and volume or production limits.
>
> [. . . ]
>
> A second means of reducing the risk of most-favored-licensee clause from the licensor's standpoint is to require the favored licensee to accept *all* the terms of any later license, good and bad, as a condition of receiving the benefit of any more favorable terms.  Although the law generally requires this in any event, **explicit contractual language to that effect** may avoid unnecessary litigation.

2 Jay Dratler, *Licensing of Intellectual Property*, § 9.05[1] – [2] (2014) (footnotes omitted, bolded emphasis added); *cf.*, Federal Judicial Center, *Manual for Complex Litigation, Fourth*, at § 13.23 (2004), which states:

> Such [MFL] clauses have several drawbacks: (1) the potential liability under them is indeterminate, making them risky; (2) the additional recovery they may produce for some plaintiffs without any effort by their attorneys makes it difficult to fix fees; and (3) the factors that induce parties to settle with

> different parties for different amounts, such as the time of settlement and the relative strength of claims, are nullified.  Such clauses can provide an incentive for early settlement as well as an obstacle to later settlements.  To limit their prejudicial impact, such clauses should terminate after a specified length of time (to prevent one or more holdouts from delaying final implementation), impose ceilings on payments, and allow flexibility to deal with changed circumstances or with parties financially unable to contribute proportionately.  The judge may have to consider voiding or limiting them if enforcement becomes inequitable.  If this determination involves disputed questions of fact, an evidentiary hearing and possibly additional discovery may be necessary.

(Footnotes omitted.)   Here, the MFL clause was sparsely defined, very broadly worded, contained no specific limitations or provisions for difficult situations, included no language of termination, and appears not to have contemplated the effect of a later license agreement, *particularly* one based on a lump-sum payment of the type at issue here.  The impact of a less than well-defined MFL clause is clearly seen in this litigation.

Hearkening to the last sentence quoted above from the Manual for Complex Litigation, it appears to the Court that additional discovery may be necessary here.  Within 14 days of the date of this Order, the parties will submit a Joint Status Report advising the Court what brief period of additional discovery is necessary to determine JPMC's relevant after-acquired entities and the values necessary to complete the computation of additional payments under the Cathay license's formula.  The Court will then set a further Pre-Trial Conference to take place after the additional discovery and the parties may proceed to trial on the issue of what remaining damages, if any, are at issue.

The Court will next consider the remaining portion of JPMC's motion for summary judgment and DTC's remaining cross-motions for partial summary judgment.

## IV.     SUMMARY JUDGMENT AS TO DTC'S AFFIRMATIVE DEFENSES

JPMC next seeks summary judgment as to DTC's affirmative defenses.  Of its 15 affirmative defenses, s*ee* Answer (Doc. No. 105) at 10-11, DTC has withdrawn: lack of

standing; release; quasi-estoppel; acceptance of benefits; ratification; unclean hands; and accord and satisfaction.  *See* DTC's Response (Doc. No. 130), at 24.  Remaining are: failure to state a claim upon which relief may be granted; waiver; estoppel; voluntary-payment rule; laches; statute of limitations; latent ambiguity; and failure to mitigate damages.  DTC also seeks partial summary judgment on waiver and the statute of limitations.  (Doc. Nos. 111, 117.)

### A.      Failure To State A Claim

DTC filed a motion to dismiss for failure to state a claim upon which relief may be granted on January 31, 2013 (Doc. No. 8), pursuant to Fed. R. Civ. P. 12(b)(6).  However, it withdrew the motion on March 13, 2013.  (*See* Doc. No. 31.)  The withdrawal "conced[ed] that the complaint can withstand the motion[ ]."  Order Denying Motion for More Definite Statement (Doc. No. 103), at 2.  Thus, DTC waived this affirmative defense.

### B.      Waiver

DTC contends that JPMC waived its MFL rights by continuing to make payments, including the final payment in May 2012.  *See*, *inter alia*, Doc. No. 117.  The waiver defense requires: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  JPMC responds the argument fails due to the anti-waiver provisions in the JPMC and BOC settlement agreements:

> 7.7      **Waiver.**  The failure of any party to insist upon strict adherence to any term of this Settlement Agreement on any occasion shall not be considered a waiver or deprive that Party thereafter of the right to insist upon strict adherence to that term or any other term of this Settlement Agreement. All waivers must be in writing and signed by an authorized representative of the Party against which such waiver is being sought.

(*See* Doc. No. 11, Ex. B (JPMC Settlement and Release Agreement), at 8, and Ex. C (BOC Settlement and Release Agreement), at 7.)   Also, the License Agreement, incorporating by reference both agreements (*see* License Agreement at 3, § 2.1), contains the following clause:

### 10.3    Amendments and Waiver

> Waiver by any party of any provision of this Agreement shall not be construed as a waiver of any other provision, nor shall it be construed as a waiver of any provision with respect to any past, present, or future event or circumstance.

*See id.*, at 8.   DTC argues Section 10.3 only prevents waiver of one term from extending to other terms in the agreement.   It further contends that JPMC waived its rights under the MFL clause generally, so that the anti-waiver provision does not save any rights under it.   But, DTC ignores the second half of the anti-waiver provision, which unequivocally states that an act of waiver does not affect any *future* event.   JPMC's motion is based on the Cathay license, executed several months *after* JPMC made its final payment. Thus, even if JPMC's payment acted as a waiver to some earlier event(s), it could not waive any rights in a license agreement that had not yet been executed.

Furthermore, the anti-waiver clauses in the settlement agreements are incorporated by reference into the License Agreement.   *See In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 318 (Tex. App.—Houston [1st Dist.] 2006, no pet.).   They establish a higher burden, requiring a *written* and *signed* waiver.   That has not occurred here.   Thus, the third element for an effective waiver – intentional conduct inconsistent with JPMC's rights – cannot be met. *Ulico Cas. Co.*, 262 S.W.3d at 778.   DTC's argument therefore fails as a matter of law and its motion for partial summary judgment (Doc. No. 117) will be **DENIED**.

### C.      Estoppel

Equitable estoppel requires (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted upon; (4) to a party without knowledge or means of obtaining knowledge of those facts; (5) who detrimentally relies on the representations.  *Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894, 906 (Tex. App. – Austin 2010, no pet.).  Here, DTC contends JPMC concealed its intent to sue when making its final $7 million payment without a reservation of rights and that DTC detrimentally relied on the unqualified payment by applying the funds to its operating expenses.  Nonetheless, DTC cites no authority, nor is the Court aware of any, that JPMC can be estopped from a breach of contract claim just because it satisfied its contractual obligations.

Moreover, DTC's President and CEO testified it would have paid its operating costs if JPMC had made its final payment subject to a reservation of rights (Doc. No. 112, Ex. 50 to JPMC's MSJ, at 327:25–328:12).  DTC has neither denounced that testimony nor shown detrimental reliance otherwise.  *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 911-12 (Tex. App. – Houston [1st Dist.] 1995, writ denied).  DTC's estoppel claim is without merit.

### D.      Voluntary-payment rule

DTC next contends the voluntary-payment rule acts as a common-law defense to unjust enrichment.  However, the voluntary payment rule does not apply to breach of contract under Texas law.  *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 775 (Tex. 2005) ("[T]o the extent the subject matter of Peake's claims is covered by the parties' contract, the [voluntary payment] rule would not apply.").  Accordingly, the argument is without merit.

### E.      Laches

This defense focuses on whether JPMC had actual or constructive notice of the Subsequent Licenses years before filing this action (Doc. No. 130 at 31).  However, JPMC's motion is based on the 2012 Cathay Agreement, (Doc. No. 110 at 23), and JPMC filed its complaint less than two months later.  *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay).  Absent "unreasonable delay," DTC's laches defense is without merit.

### F.      Statute of limitations

As with waiver, DTC moved for partial summary judgment on its statute of limitations defense (Doc. No. 111), duplicating the arguments in its Response.  It contends that any license agreement entered into four or more years before this lawsuit is barred.  Because JPMC's claim relates to the Cathay Agreement, the statute of limitations is not implicated and its motion will be **DENIED** as moot.

### G.      Latent ambiguity

DTC contends the MFL clause has a latent ambiguity requiring a finding of fact as to the meaning of a "more favorable term."  Response (Doc. No. 130), at 32.  "A latent ambiguity exists when the contract appears to convey a sensible meaning on its face, but it cannot be carried out without further clarification."  *CenterPoint Energy Hous. Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 431 (Tex. App. 2005).  Parol evidence may be used to clarify such a term.  *Nat'l United Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995).  However, the Court has already found the MFL clause unambiguous herein.  Accordingly, there is no latent ambiguity.

### H.      Failure to mitigate damages

DTC's finally argues that JPMC had notice of the Subsequent Licenses but still remitted the final $7 million payment directly to DTC without reserving its rights, thus failing to mitigate its damages.   JPMC responds its damages only accrued when DTC executed the Subsequent Licenses with more favorable terms (Doc. No. 137 at 10).   Further, JPMC argues that had it breached its contractual duty to pay, it could have lost its license, a more than "trifling expense."   *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995).   Because JPMC's injury only accrued with the Cathay Agreement after its final payment, it could not have mitigated damages as DTC suggests and this defense fails.

In sum, none of DTC's remaining affirmative defenses has merit.   JPMC has left no genuine dispute as to any material fact, and has demonstrated it is entitled to judgment on each defense as a matter of law.   Fed. R. Civ. P. 56(a).   Accordingly, JPMC's motion for summary judgment will be **GRANTED IN PART** with regard to DTC's affirmative defenses and DTC's motions for partial summary judgment (Doc. Nos. 111, 117) will be **DENIED**.

## V.      SUMMARY JUDGMENT AS TO DTC'S COUNTERCLAIMS

Finally, JPMC seeks summary judgment as to DTC's four counterclaims.   DTC seeks a declaration that (1) DTC has not breached the contract with JPMC; (2) JPMC has no damages because it did not timely file this lawsuit; (3) JPMC has repudiated the contract; and (4) JPMC breached by suing for breach of contract suit rather than declaratory judgment.

The Court's rulings have already invalidated DTC's counterclaims.   Further, each simply attacks JPMC's ability to enforce the contract.   In the context of breach of contract suits, counterclaims for declaratory relief must do more than address issues raised by the underlying suit.   *See Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:13cv312, 2014 WL

685557, at *3 (N.D. Tex. Feb. 21, 2014).   To recover on its lawsuit-in-chief, JPMC must prove there is a valid and enforceable agreement between JPMC and DTC.   For that reason, DTC's counterclaims are duplicative of the issues raised in JPMC's suit, because each counterclaim seeks to declare the agreement unenforceable.   *See id*.   Therefore, DTC's counterclaims are subject to dismissal.   *Id*.   Even viewing the facts in the light most favorable to DTC, there is no genuine dispute as to any material fact, and JPMC is entitled to summary judgment as a matter of law.   Accordingly, JPMC's motion for summary judgment will be **GRANTED IN PART** on the issue of DTC's counterclaims.

## VI.     CONCLUSION

JPMC's request for summary judgment and a ruling that DTC owes JPMC the benefit of the price term from the Cathay Agreement and a refund of the difference between that price term and the price JPMC paid under the License Agreement cannot be granted because a genuine dispute of material fact exists.   Specifically, JPMC cannot simply replace one price term with another without including the additional issue of payment for after-acquired entities, which constitutes the entire actual consideration under the Cathay license.   However, JPMC has demonstrated that no genuine fact exists as to each of DTC's affirmative defenses and counterclaims.   Therefore, JPMC is entitled to summary judgment on those points. DTC's three cross-motions for partial summary judgment must be denied.

Accordingly, the Court **DENIES IN PART** and **GRANTS IN PART** JPMC's motion for summary judgment (Doc. No. 110) consistent with the opinion herein.   JPMC's separate motion to dismiss DTC's counterclaims (Doc. No. 119) is **DENIED** as **MOOT**.   DTC's motions for partial summary judgment (Doc. Nos. 111, 117, 118) are **DENIED**.

Within 14 days of the date of this Order, the parties will submit a Joint Status Report advising the Court what brief period of additional discovery is necessary to determine: JPMC's relevant after-acquired entities; the values necessary to complete the computation of additional payments under the Cathay license's formula; and a consistent resolution of any return to JPMC under the MFL clause.  That will constitute the sole issue for trial.

**It is SO ORDERED.**

**SIGNED this 5th day of February, 2015.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE