```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4   JP MORGAN CHASE BANK, NA     )(

 5                                )(  CIVIL DOCKET NO.

 6                                )(  5:12-CV-00119-JRG

 7   vs.                          )(  MARSHALL, TEXAS

 8                                )(

 9   DATATREASURY CORPORATION     )(

10                                )(  MARCH 27, 2017

11

12

13           STATUS CONFERENCE AND MOTIONS HEARING

14           BEFORE THE HONORABLE RODNEY GILSTRAP

15                    UNITED STATES JUDGE

16

17   APPEARANCES:

18   FOR THE PLAINTIFF:  (See sign-in sheets docketed in
                          minutes of this hearing.)
19

20   FOR THE DEFENDANT:  (See sign-in sheets docketed in
                          minutes of this hearing.)
21

22   COURT REPORTER:  Ms. Tammy L. Goolsby, CSR

23

     Proceedings taken by Machine Stenotype; transcript was produced
24   by a Computer

25
```

1                          I N D E X

2

3    Date:   March 27, 2017

4                                                    PAGE

5    Appearances                                       1

6    Hearing                                           3

7    Court Reporter's Certificate                     43

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S
 2              COURT SECURITY OFFICER:  All rise.
 3              THE COURT:  Be seated, please.  This is the time set
 4    for a Status Conference and Hearing on Motions to Compel and
 5    related motions in the JP Morgan Chase Bank NA versus
 6    Datatreasury Corporation, case being Civil Action No.
 7    5:12-CV-119.
 8              Let me ask for announcements on the record.  Who is
 9    here on behalf of the Plaintiff JP Morgan Chase?
10              MR. DOAN:  Your Honor, Darby Doan, and with me is
11    Daniel Mayerfeld from Skadden Arps and Zach Newman.
12              MR. NEWMAN:  Good morning, Your Honor.
13              MR. DOAN:  Steve Aquino.  And the law firm is Hahn --
14              MR. NEWMAN:  And Hessen.
15              MR. DOAN:  -- & Hessen, LLP.
16              THE COURT:  All right Thank you.  What says the
17    Defendant?
18              MR. GILLILAND:  Your Honor, Derek Gilliland and Winn
19    Cutler with Nix, Patterson & Roach on behalf of Datatreasury
20    Corporation.  And with me is Sam Johnson from Scott, Douglass,
21    and McConnico on behalf of Nix, Patterson & Roach.
22              THE COURT:  All right.  Thank you.
23              Counsel, these are motions that have been pending for
24    some considerable length of time; however, they haven't been
25    assigned to me until earlier this year; and once they were
```

1  assigned to me, it became pretty clear that I needed to get you

2  all before me fairly soon to see exactly where we are, what's

3  the status of these matters, what are the parties' concerns and

4  intentions.

5          I've reviewed the pending motions.  I've also

6  reviewed Mr. Newman's letter of October 13th addressed to Judge

7  Schroeder, who had the case after Judge Schneider and before it

8  got to me.

9          What I would like is, starting with the moving

10  Plaintiff, I'd like a brief overview of where you think you

11  are, what you think the issues are, and what you're looking for

12  the Court to facilitate from your perspective, and then the

13  same type of response from the Defendant, so why don't we start

14  with Plaintiff.

15          Let me hear that from the podium, Mr. Newman, when

16  you're ready.  I know -- and I'll save you sometime.  I know

17  generally from a high level the history on this litigation.

18          MR. NEWMAN:  Excellent.  Well, first, good morning,

19  Your Honor.  Thank you for having me in your courtroom.  Zach

20  Newman from the firm of Hahn & Hessen for JP Morgan Chase Bank.

21          Just by way of a very brief background, the case

22  started off as a lawsuit against Datatreasury Corporation back

23  in 2012.  A judgment was ultimately stipulated.  JP Morgan

24  Chase is now a judgment creditor with a judgment that's been

25  affirmed.  There's no further appellate processes that are

1    available to them.  It's a $69 million principal judgment

2    amount.

3              The -- the underlying of the litigation, the basis of

4    litigation is not really material to the issues that we have

5    before the Court today except for in one respect, and I'll

6    explain that in a moment.

7              We're essentially here today, Judge, to ask the Court

8    to assist a judgment creditor to enforce post-judgment

9    discovery advices and inquiries to both the judgment debtor and

10   its principal counsel, who is also serving as the claims

11   administrator for all of the patent prosecution cases that were

12   brought.

13             In addition, Nix, Patterson has been explained during

14   sworn testimony in the underlying litigation that it is the

15   repository, the custodian for all of Datatreasury's documents

16   from what we understand, electronics documents, banking

17   records, everything.  Everything resides with Nix, Patterson.

18             Once the judgment was entered in the Court, JP Morgan

19   served just three devices, three devices.  One was a document

20   demand to Datatreasury, and these are all in the record.  The

21   second device is an interrogatory that went to Datatreasury,

22   and the third is a subpoena for documents that went to the Nix,

23   Patterson firm that was serving as the claim administrator, the

24   custodian of records, and also counsel for Datatreasury.

25             In the Datatreasury document demand and interrogatory

 1   request, the definitions are broad enough to encompass Nix,

 2   Patterson.  In the Datatreasury definition, it includes

 3   attorneys, so essentially JP Morgan is saying Datatreasury and

 4   Nix, Patterson, please give me all the documents that you have

 5   that we're asking for, and those documents include financial

 6   documents, documents supporting the substantiating transfers,

 7   location of assets.

 8            You're dealing with a company that had two very

 9   valuable patents, had many other patents, some of which have

10   been transferred, we believe, but two principle patents have to

11   do with a check processing imaging, and those patents and the

12   prosecution of cases generated from what we understand close

13   to, if not in excess of, Your Honor, $600 million, $600

14   million.

15            JP Morgan was the first bank to enter into a

16   settlement and license agreement back in 2005 with

17   Datatreasury, but there have been many summary agreements

18   thereafter and a tremendous amount of money has been generated,

19   and at this point, with the $69 million principal judgment,

20   we're interested to understand where the money is, where it

21   went, what it was used for.

22            And we have received from Nix, Patterson a number of

23   productions.  They have produced a number of productions, and

24   when I say Nix, Patterson, it's really Datatreasury and Nix,

25   Patterson.  We don't really know exactly where the documents

1    are coming from that's given to us from Nix, Patterson, and

2    they'll likely tell you that they have made multiple

3    productions.

4         The problem is that what we're receiving is kind of

5    like a drip out of the faucet.  Every so often when we make

6    noise, a drip, a drip, a drip, and it's just not adequate, and

7    when we get into the motions, I have certain documents to show

8    Your Honor and to explain why that's the case.

9         So JP Morgan comes to Court and asks Your Honor the

10   way to facilitate this case is very simple in our view.  We

11   understand the defense may have a different view, but it's

12   really very simple.

13        Three orders we ask for, or even one order, that

14   simply says, Datatreasury and Nix, Patterson, you have to

15   comply with the discovery demands, and that gives us an

16   enabling order that allows us to say to both Nix, Patterson and

17   Datatreasury, you haven't given us this, you haven't given us

18   that, and you should have and you're required to, and then if

19   we need to come back to Court to further enforce the order,

20   we'll do that.

21        But at this point, Datatreasury and Nix, Patterson

22   have selected what they wanted us to see, and that boils down

23   to two principal issues; one, they refuse to give us any

24   documents earlier than June 2011.

25        And I don't want to get too into the motions, but

 1   they draw a demarkation, they draw a line and say we're not

 2   giving you a single thing before June of 2011.

 3              THE COURT:  June 2011 is what?  Is that the date with

 4   the Cafe Bank settlement or --

 5              MR. NEWMAN:  No.  June 2011 is the date that JP

 6   Morgan wrote to DTC, to Datatreasury and its attorneys, to

 7   inform them that Datatreasury upon JP Morgan's belief had

 8   entered into several third party license agreements that had

 9   more favorable terms and that would cause the true up.

10              Now, Datatreasury actually had the obligation in our

11   settlement agreement to notify JP Morgan when it entered into

12   those agreements.  We were the first party to enter into these

13   agreements, so there was no set market for the economics of

14   our -- of our transaction, but we have agreements going back to

15   2006, and it was in our expert report, that were comparable

16   agreements that would have caused a true up.

17              And what Nix, Patterson, Datatreasury is saying now

18   is, well, the way that we -- that we entered into the judgment

19   with you for the $69 million, we relied upon this Cafe Bank as

20   the representative example, which was an agreement that was

21   actually signed -- I have it here.  Let's see.  What's the

22   date?  October of 2012.  October of 2012 is the representative

23   example, but it's mixing apples and oranges.

24              As the judgment creditor now and where DTC had an

25   obligation to notify us all going back to 2005, we should have

1   the right to understand what financial information, what

2   transactions were occurring, the monies in and the monies out,

3   for all that time.

4          And just to put this into perspective, in 2011 we

5   know that a dividend was declared by the board for Datatreasury

6   where they disbursed -- they paid a dividend of $14.1 million

7   in 2011.  In 2012 we know they made a dividend of at least a

8   value of $3 million by distributing stock in another company to

9   its shareholders.

10          But they will not tell us what dividends were

11   declared in 2010 or 2009 when the bulk of these settlement

12   agreements were being entered into, and we believe that we're

13   entitled to that.

14          THE COURT:  Let me ask you --

15          MR. NEWMAN:  Yes.

16          THE COURT:  -- this question.  Clarify this point for

17   me.  I understand what you're saying that with regard to the

18   litigation brought by Datatreasury, the posture of the

19   Plaintiff that generated the 600 plus million dollars that you

20   referred to.  I understand you to say that the records were not

21   only the law firm, but the records for the client are in the

22   possession of Nix, Patterson.

23          MR. NEWTON:  That's right.

24          THE COURT:  I assume that the ordinary operating

25   records of Datatreasury and the records for their operations

1  not tied to the litigation are separately in the possession of

2  Datatreasury and are elsewhere, but are not in the possession

3  of Nix, Patterson.  Can you make that distinction for me?

4           MR. NEWTON:  I think I can, Your Honor, and in the

5  record, according to DTC's, again, Datatreasury's chief

6  executive officer at the time Keith Delucia, he testified that

7  DTC has almost no documents because they gave them to Nix,

8  Patterson, and he testified that --

9           THE COURT:  Wait a minute.  No documents at all or no

10  documents related to the litigation?

11           MR. NEWMAN:  He then testified that, quote, Nix,

12  Patterson has all of his electronic files and documents,

13  unquote, and has, quote, anything at all, whether it be emails,

14  legal documents, digital files, or physical forms.

15           THE COURT:  So in other words what you're telling me

16  is for purposes of discovery in aide of enforcing Chase's

17  judgment, you're not able to distinguish a line between Nix,

18  Patterson and Datatreasury?

19           MR. NEWTON:  Absolutely not, completely blurred, and

20  so every sheet of paper that we have, I don't know exactly what

21  file it came out of.  I have no idea.  All I know is --

22           THE COURT:  Let me ask this --

23           MR. NEWTON:  Sure.

24           THE COURT:  -- another way.  I can understand an

25  overlap between the law firm and the client with regard to the

 1    activities and litigation generated the recoveries.

 2            At some point, those recoveries as they came in were

 3    disbursed, and Datatreasury got its net recovery out of those

 4    lawsuits, and I assume Nix, Patterson got its expenses and its

 5    legal fees and so forth out of those lawsuits, and what Nix,

 6    Patterson kept and what Datatreasury got should add up to the

 7    total of what was paid by that particular Defendant who either

 8    settled or discharged the judgment or whatever.

 9            What happened to the money after it was distributed

10    to Datatreasury and whether it's been -- how it's been handled,

11    whether it still exists, whether it's all gone, or anything in

12    between, those records, you're telling me, are within the

13    control and the sole possession of Nix, Patterson or not

14    elsewhere held by an independent entity operating as

15    Datatreasury Corporation.

16            MR. NEWMAN:  That's what we understand and that's

17    what we've been led to believe.  That's what we've been led to

18    believe.

19            May I use the easel for a moment, Your Honor?

20            THE COURT:  You may.

21            MR. NEWTON:  So this June 2011 date that they're so

22    focusing on, in 2011 you had a $14.1 million dividend.  In 2012

23    you had at least a $3 million dividend.  2013 to present,

24    unknown because they won't tell us.  2010, 2009, 2008, and

25    back, we don't know because they won't tell us.

1           The bulk of the money was coming in in '09 and '10,

2     '08, '09, and '10, but they won't tell us, so I can't answer

3     Your Honor's question where the money went.

4           What I can answer is that some of the bank statements

5     that we received, and we haven't received full copies, shows

6     that Datatreasury is cash insolvent, has no cash, no cash to

7     satisfy this judgment.

8           We know that Nix, Patterson wasn't just serving, as I

9     said, as the lawyers because when the money comes in, it went

10    straight to Nix, Patterson as the claims administrator.  Nix,

11    Patterson would then make tons of disbursements to other

12    lawyers, to DTC, but we don't have all of their financial

13    records.  We have some summary statements.

14          The only general ledger that they gave us was for

15    essentially the 2011 and 2012 time frame, so they gave us just

16    this small little snapshot and gave us just what they wanted to

17    give us, but we don't know where the money went, and that's the

18    very reason that we're here in court today.

19          THE COURT:  Well, ordinarily in a situation like

20    this, at least as I see it, there's usually a threshold, and

21    from the creditor's standpoint, knowing what the client got and

22    then being able to trace that money going forward is a first

23    level and reasonable inquiry.

24          What a Defendant in this case, the Defendant's law

25    firm is always concerned about is at some point the creditor is

```
1   going to say the law firm either overcharged or kept money that

2   should have gone to the client and that money is money that

3   could discharge or partially discharge our judgment and we want

4   to get into the law firm's business and we want to go through

5   every dispersement they made and we want them to justify to us

6   every penny they paid out of these recoveries --

7              MR. NEWTON:  Right.

8              THE COURT:  -- so that we can try to pull the money

9   out of that --

10             MR. NEWMAN:  Right.

11             THE COURT:  -- out of the law firm's pocket.  Now,

12  ordinarily the judgment debtor, as the prior Plaintiff in all

13  this litigation, would be a freestanding separate entity with

14  its own records and you could find out from them what they

15  received from Nix, Patterson and Nix, Patterson could confirm

16  what they distributed with them and you could run forward

17  tracing down, tracking down that money, whether it was properly

18  handled, whether it's been hidden, where it might be, to

19  satisfy your judgment.

20             That I don't have from a high level a real problem

21  with.  What I do have a problem with is a fishing expedition

22  and a blank check, no pun intended since you represent a bank,

23  to go back into the law firm's business and try to create or

24  generate a way to recover part of what they kept out of the

25  litigation that the client seemed or I would assume was
```

1    satisfied with and didn't say, you've underpaid me, I need more

2    money.

3              MR. NEWTON:  Right.

4              THE COURT:  And that's where every law firm is very

5    suspicious, and rightfully so.  And, you know, I need to -- I

6    need to be told and I want to know going forward in this matter

7    is Chase on the first level of pursuit or are you on the second

8    level of pursuit.

9              And if you're going to -- if you're going to try to

10   pursue the second level of pursuit, you're going to have to

11   give me some justification for that.  I'm not just going to

12   turn this law firm's records over to you for whatever purpose

13   you want.

14             But I do think you need and you're entitled to know

15   what the client got, what the net was, and the gross received,

16   the amount kept by the law firm for its fees, expenses, and

17   overhead, and what the client received so that you can then

18   know what you're looking at going forward to try and find out

19   where these dollars went in hopes of recovering on your

20   judgment.  So that is perfectly legitimate from a high level.

21             Now, I know there are probably a number of sublevel

22   problems, issues, and disputes that we may have to work

23   through, but I want to make it clear to you I'm open to the

24   kind of first level pursuit that I've described from a high

25   level.

1          I want you to understand I am not open, without some

2     real justification, to the second level of pursuit that I've

3     described to you, and I want you to be clear that I see a line

4     between those two.

5               MR. NEWMAN:  May I respond to that, Your Honor?

6               THE COURT:  Sure.

7               MR. NEWMAN:  I don't think we have a disagreement.  I

8     think we're on the same page with respect to the Court's

9     perspective.

10              Now, I will say that Nix, Patterson received from

11    what we understand about 48 percent as revenue for the

12    settlements; and Nix, Patterson also put itself in a unique

13    position, unlike other typical law firm, client relationships,

14    where it was acting as a claims administrator in addition to

15    the law firm is now acting as the custodian for all the

16    records, but all of the document requests --

17              THE COURT:  That's not --

18              MR. NEWMAN:  The --

19              THE COURT:  That's not a terribly unusual

20    situation --

21              MR. NEWMAN:  Let me just say this, Judge.  All the

22    document requests and interrogatories --

23              THE COURT:  Counsel -- counsel.

24              MR. NEWMAN:  Yes.

25              THE COURT:  It's my prerogative to interrupt you.

```
 1   It's not your prerogative --

 2             MR. NEWMAN:  Of course, Your Honor.

 3             THE COURT:  -- to interrupt me.  Do we understand

 4   each other?

 5             MR. NEWMAN:  Of course.

 6             THE COURT:  Okay.  What I was going to tell you

 7   before you started talking again is that anybody familiar with

 8   the decades of asbestos litigation in East Texas and other

 9   places know that it's not unknown for a law firm to act as a

10   claims administrator as well as a disbursing agent for

11   recoveries.  Go ahead and finish your comments.

12             MR. NEWMAN:  Yes.  Thank you, Your Honor.  Every

13   document request that was asserted in the Datatreasury document

14   demand, the interrogatory, and the Nix Patterson subpoena are

15   all aimed to understand the flow of monies that came in

16   separate and apart from the Nix, Patterson revenue.

17             We are not looking at that inquiry that you just

18   mentioned as part of this effort.  We're not looking to start

19   looking into distributions at the Nix, Patterson Law Firm at

20   this time.  We're not asking for that discovery.

21             So when I said that we agree with the Court's

22   perspective, we are looking for Datatreasury information,

23   not -- if Nix, Patterson had an agreement with Datatreasury and

24   it earned 48 percent of settlements and judgments and payments,

25   royalties.
```

1         And if we want discovery about that, we will serve a

2   device, and if we have an issue, we'll come back to this Court.

3   I am not looking to go beyond that level at this time.

4         THE COURT:  All right.

5         MR. NEWMAN:  And the reason I mentioned about the

6   blurring of the companies is because -- about the firm acting

7   as the claims administrator is that with the amount of money

8   that flowed through this company and the amount of transfers

9   that we've seen just in the -- in the excerpts of the general

10  ledgers that we have, we know that they were transferring

11  millions of dollars to directors and shareholders.  We don't

12  know why.  They won't tell us why.

13        We have board minutes, for example, Your Honor.  This

14  is the board minutes for the end of 2011, and they mention that

15  they had an executive compensation expert report that

16  identified bonuses, and we see in the general ledger that major

17  transfers were made, but we don't know why they are made.

18        We've asked for the documents to support those

19  transfers, those payments.  We can't even evaluate whether we

20  have a claim or not.  In these board minutes, Datatreasury

21  produces them like this without a privilege log or without

22  claiming that there's any privilege.

23        In the 2012 board minutes --

24        THE COURT:  Well, as I said earlier, I'm perfectly

25  aware below the high level division that I've mentioned with

 1   you, and that you've indicated you agree with me on, that there

 2   are going to be a lot of sublevel disputes and arguments that

 3   we're probably going to have to work through.

 4          But I wanted to be clear up front as to how I see the

 5   fork in the road here and to make sure that you understand

 6   which fork of the road we're trying to go down, and I think --

 7   I think we've covered that.

 8          MR. NEWMAN:  All right, Judge.

 9          THE COURT:  We'll get into all the --

10          MR. NEWMAN:  That's fine.

11          THE COURT:  -- potholes in the fork of the road that

12   we go down as we go down.  I'm going do this at this point:  I

13   want to hear from the Defendant in response and then let's see

14   where we go from here.

15          MR. NEWMAN:  Thank you.

16          MR. GILLILAND:  Your Honor, Derek Gilliland for

17   Datatreasury Corporation.  I'm from Nix, Patterson & Roach.  We

18   are separately represented here by Mr. Sam Johnson, we being

19   the law firm of Nix, Patterson & Roach, because we have been

20   subpoenaed as the law firm for documents.

21          Now, I want to go through a little bit of the

22   background for the sake of the Court, but I will say first the

23   concept and the argument and the idea that Datatreasury's

24   repository for all of its documents is Nix, Patterson & Roach

25   and that Nix, Patterson & Roach is handling all of their

 1   financial transactions, both of those statements are patently

 2   false.  We are the law firm for Datatreasury Corporation for

 3   purposes of patent infringement assertion claims.

 4           Now, backing up, Datatreasury, historically they were

 5   formed as a result of an invention created by Claudio Ballard

 6   that was encapsulated in two patents that we refer to as '137

 7   and the '988 patent.

 8           When the first of those patents issued around 2000,

 9   Datatreasury Corporation raised over $25 million in capital,

10   built out a data center, and then started trying to sell its

11   services to the financial industry to serve as an archive for

12   financial documents.

13           The idea of the patents came to Claudio Ballard when

14   he saw a pizza restaurant guy storing all of his credit card

15   receipts in a shoebox so that if an issue came up later, he

16   could dig through the shoebox and verify the transaction, so

17   that prompted Claudio to come up with the idea of an electronic

18   document repository that led to the patent applications.

19           When the patents issued, they raised that money.

20   They went out and pitched their services to several companies,

21   one of the first of which being JPMC Corporation, and this is

22   in the early 2000 time period.

23           They spent unfortunately, like many start-up

24   companies, almost all of the capital that they raised.  They

25   spent the majority of that building out the data center

1   counting on getting clients right away and making money right

2   away.

3            Well, the banks, when they looked at them, and

4   representatives from the JP Morgan Chase looked at

5   Datatreasury, realized they were a start-up company, they

6   passed on using them for their service, but they went on to

7   create a company called Viewpoint and another company called

8   SCP Co, all of which later got pulled into patent infringement

9   litigation by Datatreasury.

10           We began representing Datatreasury, my law firm, in

11  2002 and have represented them in cases against multiple

12  Defendants, including JPMC.  Counsel for JPMC Skadden Arps also

13  represented Viewpoint Corporation, also got copies of all of

14  these settlement agreements as part of the ongoing litigation.

15           Even after Chase settled, the same lawyers for

16  Skadden stayed involved on behalf of Viewpoint Corporation in

17  the ongoing litigation that ultimately resulted in a trial in

18  this very courtroom in 2010, at which many of these agreements

19  were discussed in open court.

20           Then fast forward to 2011, and for various reasons,

21  JPMC had reason to write the Datatreasury Corporation

22  concerning an indemnity claim because a gentleman named Duke

23  had sued Datatreasury, the banks, and several others, under an

24  idea that there was a conspiracy to defraud him of his money or

25  his interest in the patents and claimed some ownership interest

1   in the patents.

2            As a result of him filing that lawsuit, JPMC demanded

3   indemnity from Datatreasury Corporation and in June of 2011

4   wrote a letter demanding indemnity, as well as raising the most

5   favored licensee clause for the first time for Datatreasury.

6            So that's what keyed that 2011 date as the first

7   notice Datatreasury had that JPMC was unaware of any prior

8   settlement agreements or interpreted the most favored licensee

9   clause different than Datatreasury interpreted it.

10           That resulted in the lawsuit that was filed in

11  November of 2012, went before Judge Schneider, summary judgment

12  motions were granted that resulted in the judgment that was

13  taken up on appeal.  The Fifth Circuit ultimately affirmed

14  Judge Schneider in a two-to-one decision, and motion for

15  rehearing on bond and petition were served and both denied, so

16  the judgment became final, and then we get into the discovery

17  that we're here about.

18           The first issue is the concept that Mr. -- or that

19  Nix, Patterson & Roach has all of Datatreasury's documents is

20  patently false, and they're relying entirely on the excerpt

21  from the deposition of Keith Delucia in which -- I believe it

22  was Mr. Mayerfeld was asking Mr. Delucia, he started asking

23  Mr. Delucia about whether documents -- Mr. Delucia's documents

24  had been gathered and collected for this litigation.

25           THE COURT:  Let me interrupt you for a minute,

1    counsel.

2              MR. GILLILAND:  Yes, sir.

3              THE COURT:  Just for purposes of clarify and

4    understanding, does Datatreasury today maintain a physical

5    location and a presence in the State of Texas separate and

6    apart from the law offices of Nix, Patterson?  Do they operate?

7    Do they conduct business?  Are they -- how are they structured?

8    Give me some background.

9              I mean, you come up and say that Plaintiff's

10   counsel's statement that there are no records outside of Nix

11   Patterson with regard to Datatreasury is patently false.  Tell

12   me where they are and where their records would be and give me

13   an idea of if there is space and distance between Nix,

14   Patterson and Datatreasury, explain what that space is and

15   where it is.

16             MR. GILLILAND:  Certainly, certainly, Your Honor.  So

17   since roughly 2014, Datatreasury's operations have been

18   minimal, but up until -- and I'm not certain of the exact date,

19   whether it was 2015, 2016, Datatreasury had physical offices in

20   facilities in Plano.

21             Those have since -- the patents in a separate

22   lawsuit, the two key patents, the '137 and '988, have been

23   declared invalid.  As that process has gone on, Datatreasury's

24   operation have slowed significantly when -- to where they -- I

25   think they have -- I know they've closed the office in Plano.

1  I believe all the furniture has been put into storage either in

2  the Plano area or in Boca Raton, Florida.

3          The outside general counsel Mr. Shephard Lane has

4  handled the -- what is left really of the operations of

5  Datatreasury Corporation, and it's my understanding that he has

6  control over where most of the documents are.

7          We do know more recently we have gotten some of the

8  banks statements that we've produced to the Plaintiff we've

9  gotten from Datatreasury's accountants that are in Dallas.

10 It's the Seville CPA firm in Dallas.

11          I expect there are probably records maintained by the

12 law firm that have had to defend Datatreasury in various claims

13 in New York, that those documents would either be there or with

14 Mr. Lane.

15          Mr. Lane would normally attend the hearing today,

16 Your Honor, but he had a heart valve put in last June or July,

17 and because of complications from that -- and I have a letter

18 from one of his doctors if the Court would like to see it.

19 He's -- they -- he's back in Mount Sinai Hospital having that

20 valve replaced because the original valve has a bacterial

21 infection, so he's not here today and he's not available to

22 answer questions specifically about where some of these

23 documents are, but if they have -- so Mr. Lane has control over

24 those documents.

25          They also have an agent I think that was identified

```
 1  in interrogatories that maintains shareholder communications

 2  for Datatreasury, which Datatreasury Corporation has

 3  hundreds -- I believe a little over a thousand individual

 4  shareholders, and there's a separate company, whose name

 5  escapes me at the moment, that manages and maintains those

 6  correspondence from Datatreasury.

 7          THE COURT:  When you said in your briefing that JP

 8  Morgan Chase could get what they were seeking from Datatreasury

 9  from other sources, are you -- are you now telling me that that

10  is Skadden Arps or some other law firm or precisely what other

11  sources are available for them to get this information without

12  coming directly to you?

13          MR. GILLILAND:  Sure.  Well, and the sources would be

14  from Datatreasury as we're able to get the documents from

15  Datatreasury.  We've identified the banks where Datatreasury's

16  maintained accounts.  I believe we've identified the company

17  that maintains the shareholder communications in

18  interrogatories.

19          They could -- they have yet to take a deposition of

20  an individual from Datatreasury to find out where all the

21  documents are, ask questions about these transfers, but if they

22  would just take a deposition of an individual, they could get a

23  lot of clarity into who else would have control over a lot of

24  these documents rather than counsel for Nix -- or counsel for

25  Datatreasury Corporation, being Nix, Patterson & Roach.
```

1              One point that does bring to mind, Your Honor, is the

2      idea that they can't tell where the documents came from.  We've

3      made it -- I thought we made it very clear by the Bates number

4      method.

5              We've produced -- when we produced on behalf of Nix,

6      Patterson & Roach, we made sure that the Bates numbers began

7      with NPR, and we identified those documents as being produced

8      by Nix, Patterson & Roach under the subpoena they provided.

9      Everything else that we've produced in the case has had a DTC

10     for Datatreasury Corporation prefix on it, so it's clear which

11     documents have come from us and which documents have come from

12     Datatreasury.

13             From Nix, Patterson & Roach, with the client's

14     permission, we've provided the internal ledger for our IOLTA

15     account, filtered for Datatreasury transactions because, as I'm

16     sure the Court is aware, that IOLTA account maintains funds for

17     all of our firm's clients.

18             We've provided the settlement distribution statements

19     that show the gross amount, the amount we removed for

20     litigation expense, the amount paid to attorneys and others,

21     and the net that went to Datatreasury Corporation, and then

22     through the bank accounts, and I assume through a deposition of

23     the Datatreasury representative, which, again, would be

24     Mr. Lane is the person most knowledgeable about all of those

25     processes.

1          THE COURT:  When you say you've provided those

2   things, I assume you've provided them from a certain point in

3   time forward.

4          What is the chronological scope of what you just told

5   me you've provided, and if there is a gap timewise, what's the

6   justification for allowing that gap not to be covered with the

7   same kind of information?

8          MR. GILLILAND:  Certainly, Your Honor.  The

9   information we provided has been from the June 2011 time period

10  forward, which is the date the Datatreasury was first aware of

11  a dispute over how the most favored licensee clause should be

12  interpreted.  We provided that information all the way up

13  until -- at least on behalf of the firm, it was provided up

14  until the June 2015.

15         We haven't supplemented that production, but we

16  wouldn't have -- I don't see a reason why we couldn't do that.

17  The briefing was filed.  The case sort of went into a hold

18  period.

19         THE COURT:  What is it about this June 2011 date that

20  you believe is magic in some way that you can't go prior to

21  that in making these same kind of settlement distribution

22  disclosures as to what was received, what was kept out and paid

23  to others, and what was disbursed to Datatreasury?

24         MR. GILLILAND:  There are two parts in response to

25  that, Your Honor.

1         The first part being that post-judgment discovery is

2    to identify what assets are available to satisfy a judgment,

3    and that would arguably only include the assets that are

4    currently available to Datatreasury Corporation.

5         So we felt like we were going beyond what was really

6    required under Rule 69 because there have been no claims of

7    fraudulent transfers, there have been no allegations of that.

8    There have been no depositions taken around that.

9         So we decided, well, we can go back in time, but the

10   earliest possible time that Datatreasury had notice of a claim

11   by JP Morgan Chase is when they received a letter June 2011.

12        So there couldn't be any transfers before that date

13   that were in an attempt to avoid any obligation to JPMC because

14   Datatreasury was unaware of any such obligation, so that's one

15   reason why we think going back to 2011 is broad, more broad

16   than required necessarily to identify assets currently

17   available and as broad as is reasonably relevant for

18   post-judgment discovery in this matter.

19        The second issue is --

20        THE COURT:  Let me ask this:  I hear your answer, but

21   Plaintiff's counsel has all but told me that the vast majority

22   of the monies accrued and paid to Datatreasury through the

23   enforcement of these patents took place before 2011, and

24   they're justifiably interested in where the biggest sums of

25   money came from and where they went.  Obviously, any creditor

 1   wants to look for the dollars and not look for the nickels

 2   until they have to.

 3           What's wrong with and why would it be improper for

 4   the Court to order the same kind of disclosure of receipts,

 5   payments to others, and funds earned and net disbursement to

 6   Datatreasury prior to 2011 than what you've given me?

 7           MR. GILLILAND:  Well, I believe, Your Honor, that

 8   again --

 9           THE COURT:  Or what you've given them.  I'm sorry.

10           MR. GILLILAND:  As we've given them.  The other

11   part --

12           THE COURT:  I mean, you've told me it may not be

13   relevant or there -- you know, there might be that was the

14   first time by which there could have been potentially some

15   improper transfer, but you haven't told me that there's a

16   justifiable pro -- that the Court could be prohibited in some

17   way or could be kept from going that far back if the Court

18   believed it to be appropriate.

19           MR. GILLILAND:  Well, we think it would be both

20   irrelevant because they were on no notice of any potential

21   debt, and it would be a time consuming burdensome task on

22   behalf of my firm, which is a third party to this action, and

23   Datatreasury Corporation, to the extent they have to gather

24   those documents as well because we're talking about documents

25   that are from occurrences over six years ago, and we don't see

 1   that there's any conceivable way that those could be -- become

 2   part or subject to the judgment, especially when the debtor

 3   could not have possibly had notice of this claim before those

 4   time periods.

 5              There's a practical issue at least for the IOLTA

 6   account, Your Honor, and I need to check on the dates, but

 7   sometime in the -- in the 2005 to 2010 time period, our firm

 8   changed the software that they used to maintain the IOLTA

 9   account, so we would have to try and recreate what we were

10   using at the time.

11              I don't know -- as I stand here, I don't know if it

12   was before 2007 or in that time period as well, but that's an

13   additional issue that we need to investigate and figure out if

14   it causes a problem.  I just haven't asked.  I had that

15   explained to me back when this briefing was fresh, but it's

16   been so long that I haven't asked that question and don't know.

17              THE COURT:  Is there one master IOLTA account for the

18   Nix, Patterson firm or were there separate IOLTA accounts for

19   Datatreasury or for separate lawsuits brought by Datatreasury?

20   How centralized or how disbursed is the money flow?

21              MR. GILLILAND:  It's a master IOLTA account that all

22   client funds are tracked in.

23              THE COURT:  Okay.

24              MR. GILLILAND:  And then our accounting department

25   keeps track of the transactions and who the funds belong to.

1           For some of the issues that they have about the

2   documents, they -- as I said, they haven't -- they haven't

3   called and asked us about them specifically.  They haven't

4   noticed a deposition, asked questions.

5           But for a lot of the documents, my understanding is

6   that in 2000 -- at the end of 2013, Datatreasury's CFO resigned

7   because there was -- for his own reasons, but I understand at

8   that point there was very little going on with the corporation,

9   and since that time Mr. Lane has overseen the transactions

10  with -- you know, with guidance from the board and others.

11          But a lot of the documents that the CFO maintained

12  that Mr. Newman mentioned I don't think have been created since

13  2013.  They may just flat not exist.  And, again, they haven't

14  asked for a deposition, but we could get answers to a lot of

15  that by getting the right person under oath to figure that out.

16          THE COURT:  Well, who would be the right person for

17  Chase to depose if they so chose to pursue a deposition for the

18  judgment.

19          MR. GILLILAND:  I believe it would be Mr. Lane since

20  he was the one most involved in those things.

21          THE COURT:  Do you know about the whereabouts of the

22  prior CFO who resigned?

23          MR. GILLILAND:  I understand he's in New York.  We've

24  been able to get -- with the help of the CEO, Mr. Delucia,

25  we've been able to get some of the documents that we have

```
 1   turned over, the asset list, et cetera, through him.

 2           But I understand he's still in New York, still has an

 3   active CPA practice, but I have not been able to talk with him

 4   directly despite attempts to do so.

 5           THE COURT:  What else?  What else do you want to call

 6   the Court's attention on those matters that we haven't covered

 7   otherwise?

 8           MR. GILLILAND:  I think I already -- well, for that

 9   matter, Your Honor, I think I've covered everything.

10           You know, we're happy to provide the documents.  We

11   don't want -- as the Court noted at the beginning, we've --

12   we've maintained in our responses and we thought we made it

13   abundantly clear in the production correspondence and the Bates

14   numbering when something is coming from my firm versus from

15   Datatreasury Corporation.

16           We don't want to allow JPMC to start digging through

17   the firm's files on this matter or the firm's records on this

18   matter beyond what we've given them, what they need know, what

19   the net that went to the client was.

20           So beyond that, we would start getting into both

21   issues involving the Texas Rules of Professional Responsibility

22   and privilege issues as well, but we are happy to provide

23   information about Datatreasury's finances, and we have been

24   working and trying to get our hands on those with the

25   corporation where the two key assets have been declared invalid
```

 1    and has minimal operations any more.  It's often difficult to

 2    get responses to things.

 3              THE COURT:  What's your response to Mr. Newman's

 4    representations to the Court about you producing, I assume

 5    within this Bates numbering system, documents that have been

 6    largely or at least partially redacted or otherwise without an

 7    indication through a privilege log or redaction log as to what

 8    the redactions might be.

 9              I mean, quite honestly I can certainly understand

10    getting documents and having large portions of them blacked out

11    with no idea as to why, what, or any clue about the basis for

12    such redactions.  What's your response to that?

13              MR. GILLILAND:  Certainly, Your Honor.  We would be

14    happy to provide a privilege log to it.  I know, for example,

15    there were some documents about entities that we were asked

16    questions of, like we expect to see documents from these

17    entities, or the example that he highlighted about the expert

18    compensation report.  I think that's the first time that's been

19    brought to my attention.

20              We had followed up asking for clarity on what these

21    questions were based on because we're happy to track it down.

22    Some of this -- some of the questions and documents they're

23    asking for -- and the one that springs to mind is there was a

24    question about a company called Zaah Corporation.  I had no

25    idea that company existed until the question was asked of me.

 1  So we're happy to sit down with them and work through the

 2  documents and answer those questions.

 3          Or if they say, look, this board meeting minutes

 4  references a report, a compensation report, we haven't found

 5  it, we need you to produce it, then we can go back and hunt

 6  down that report if it isn't in the production somewhere

 7  already in the underlying case.

 8          As far as redactions, we're happy to provide a

 9  privilege log.  It's my understanding that all of the

10  redactions made to the board of director meeting minutes are

11  reports from trial counsel or from general counsel or assisted

12  general counsel on pending litigation matters before

13  Datatreasury and, therefore, are covered by the attorney/client

14  privilege, and that was the only reason I believe we made any

15  redactions to the board of director meeting minutes was for the

16  privilege issue, attorney/client privilege issue.

17          THE COURT:  All right.

18          MR. GILLILAND:  And we're happy to provide a

19  privilege log.

20          THE COURT:  Thank you, Mr. Gilliland.

21          Mr. Johnson, do you have anything for the Court with

22  regard to your participation in this matter?

23          MR. JOHNSON:  Yes, Your Honor, just a couple of

24  things.

25          First, I'd like to say that originally this -- we

 1  were not planning to have a hearing here today.  It was -- I

 2  mean, it was originally set for today.  I agree with that.

 3          But there was discussion of having it in May, and we

 4  represented that we could have Shephard Lane here, and he's the

 5  guy that knows all this stuff, and we were looking to have

 6  Shephard Lane here, and it was decided to have it today when

 7  Shephard Lane's in the hospital.

 8          If he was here, he could answer a bunch of the

 9  statements, is what I'm trying to say, Your Honor, and we tried

10  to have him here.  We wish we could have him here, and it might

11  make sense to reset this hearing to a time when we can have

12  Shephard Lane here because he's the person that can really

13  answer probably 70 percent of the questions that the Court has

14  been asking, and he's the one that the firm has been working

15  with.

16          THE COURT:  Well, I'd like to think I just need to

17  have one hearing on this matter, but I suspect from what I'm

18  hearing this morning, there may be multiple hearings to follow,

19  depending on how this goes.

20          MR. JOHNSON:  Your Honor, I apologize, but I think it

21  may be right.

22          One other point I'd like to make is that basically

23  all of this briefing is somewhat obsolete because when the

24  briefing occurred back in 2015, it was before NPR produced a

25  fairly large amount of documents that I've got here in response

 1   to the request, so -- and there hasn't been a lot of sit down

 2   because basically it kind of fell in a void.

 3            And I'm not trying to be critical of anyone, but

 4   there hasn't been a lot of sit down between the two counsels

 5   trying to figure out what else is needed, but a significant

 6   amount of documents have been provided by Nix, Patterson.

 7            All of the relevant IOLTA documents have been

 8   presented since 2011.  All of the settlement statements for

 9   every single settlement that occurred on 2011 and after 2011

10   has been presented.  Certain DTC spreadsheets showing how the

11   payments were made have been presented.  So to say that nothing

12   has been presented is simply not correct, and we have presented

13   a lot of documents.

14            And then I would respectfully say -- and I'm not

15   trying to throw aspersions towards Plaintiff's counsel, but the

16   subpoena that they have -- that they're asking for and that

17   they've asked this Court presumably just to come in and say --

18   I think counsel was asking for an order that just says we have

19   to present everything that's responsive to this subpoena.

20            Well, this subpoena -- and we objected to it -- is

21   very wide open.  It's not discreet.  Number four, all documents

22   provided or made available to DTC shareholders or other

23   potential actual investors, so any documents we made available

24   to DTC or their shareholders they would like to see.

25            THE COURT:  Well, let me just stop you right there,

1   and I didn't say this when Mr. Newman was at the podium, but

2   I'll make it clear to everybody in the room.

3           I don't intend to give the Plaintiff a blank check to

4   go on a fishing expedition.  There are going to be disputes

5   about what's relevant and what's proper and what's necessary,

6   and I expect that the Court is going to resolve those disputes,

7   not the parties.

8           That being said, I agree with you.  A lot of this is

9   obsolete.  It's taken 20 months on some of this stuff to get

10  before a judge.  That's not necessarily my fault, but I'm

11  trying to catch up with something that's obviously old and in

12  need of being brought up to date.

13          I started off with trying to make a clear distinction

14  about the fork in the road between pursuing the information

15  related to Datatreasury and the avoidable suspicion on Nix,

16  Patterson's part that before this is over the allegations are

17  going to be focused on them and their resources in hopes of

18  trying to calm the waters so that we could get some more

19  productive cooperation in pursuing the first fork in the road

20  that needs to be pursued, and that is what Datatreasury got,

21  when they got it, and where it's gone, and is any of it left to

22  satisfy this judgment, and I'm all on board to try and get that

23  done.

24          I'm a little bit -- I'm a little bit confused about

25  this hard line in the sand on nothing prior to 2011.  I'll be

 1   honest.  I'm not at all sure that -- I understand that's six

 2   years ago, and I understand whatever the money came in before

 3   that date may be long gone by now, but I'm not sure there's a

 4   reason why the creditor's not entitled to see whatever came in

 5   to Datatreasury's hands as far back as is reasonably necessary,

 6   and I'm not sure 2011 is a hard line in the sand that for no

 7   reason cannot be crossed.

 8              Here's what I think needs to happen.  While we've got

 9   the benefit of all you gentlemen in the room -- I've got a full

10   afternoon of scheduling conferences and civil matters set.  You

11   all need to sit down and talk in a way that you haven't talked

12   before, and the Court needs a set of updated briefs from

13   everybody as to where you really are and what's currently at

14   issue.

15              And the Motion to Compel, the Motion to Enforce the

16   Subpoena, the Motion to Dismiss the Subpoena, all that is

17   effectively one issue before the Court in my view, and that is

18   how we go forward with appropriate and targeted discovery here.

19              So what I'd like is I'd like you all to meet and

20   confer for at least an hour while you're here, and you've got

21   the benefit of staying in the courtroom.  You've got the

22   benefit of my jury room, you've got the benefit of the attorney

23   conference room here in the courthouse.

24              I'd like you to -- I'd like you to meet and confer

25   about all the various issues we've discussed today.  I'd like

1   for you to get a date on a calendar when Mr. Lane can get

2   deposed, and if there's discovery that needs to actually be

3   produced before that deposition can be productive, you need to

4   talk about what that is in addition to what they already have.

5   Maybe the answer to that is nothing.  Maybe there's something

6   else.

7           And I'd like -- I'd like an updated -- basically I'm

8   going to call it a status report to the Court.  I'd like an

9   updated status report from both sides particularly bringing up

10  to date all these out-of-date issues and where we really are

11  today because reading the briefing, a lot of it is clearly

12  obsolete.

13          And I'd like something not more than 14 pages from

14  both sides, and we can call it a status report, but I want you

15  to tell me where you are on everything, what you don't have,

16  and how we can focus the issues that I'm going to have resolve

17  before we go further.

18          And I'm happy to set this for another hearing.  I

19  think you need to get a date on the calendar when this

20  gentleman who is having his heart surgery or heart issues can

21  be available and healthy and can start giving information and

22  answering the 70 percent of the questions, Mr. Johnson, you say

23  he can answer.

24          And it's been my experience that these issues start

25  out in a very unfocused and cloudy way with both sides highly

```
 1   suspicious of the other.  It's no surprise to me that Skadden

 2   Arps people and the Nix, Patterson people did battle with each

 3   other long before we got to where we are today, and there may

 4   be -- there may be levels of angst or distrust that are there.

 5   I don't know.

 6          These things usually start out as very clouded,

 7   unfocused, suspicious process.  The more real progress we can

 8   make going forward, the more that will dissipate and the more

 9   we can get down to what really needs to be produced and what

10   properly is privileged and should not be produced.

11          That's how I see it from a high level, and I want you

12   all to get together while you're here, and I want you to make

13   real progress.  I want an updated status report from both sides

14   within the next two weeks, not to exceed 14 pages a side, as to

15   where you are after you've met and conferred, what are the

16   still surviving issues from this obsolete briefing that are

17   still before the Court and still need the Court's attention on,

18   when you can get a deposition of this gentleman who has the

19   information that everybody seems to think he has, and then

20   what's left and where we need to go from there.  Then if we

21   need to reset this 30, 60, whatever days down the road and

22   follow the process forward, I'm happy to do that.

23          I'm not going to let Chase have a blank check to go

24   on a fishing expedition in Nix, Patterson's files, not going to

25   do that, not unless you show me some serious justification, but
```

1    I'm not going to let Nix, Patterson or Datatreasury hide

2    records that are reasonable and proper and should be produced

3    so that a judgment creditor who has an enforceable judgment has

4    a reasonable opportunity to enforce it to the extent the law

5    provides, and where the disputes develop along the way, I

6    expect to be the one to resolve them.

7              Any questions from anybody?

8              MR. JOHNSON:  Understood, Your Honor.

9              MR. GILLILAND:  No, Your Honor.

10             MR. NEWMAN:  Judge, I have one question.  As part of

11   the meet and confer, do we want to include -- we'll include the

12   June 2011 date?

13             THE COURT:  That's an issue.  I'm going to -- the

14   updated briefing that you're going to give me, I want you both

15   to address that issue and the propriety and properness of going

16   before that date or staying with that date as some kind of a

17   threshold before which Datatreasury and/or Nix, Patterson says

18   you shouldn't go.

19             MR. NEWMAN:  Thank you.  Because that -- that -- in

20   response --

21             THE COURT:  That sounds like it's one of the bigger

22   issues out there.

23             MR. NEWMAN:  It actually has prevented us from

24   serving any other subpoenas, so they use the accountants, they

25   use the Shelton firm.  We didn't want to subject subpoenas and

1   have multiple jurisdictions dealing with an issue that was

2   already before the Court as to the June 2011 date, so it has

3   effectively impeded our ability to even move forward and get

4   records from non-parties.

5           THE COURT:  To the extent after you meet and confer

6   that's still a point of disagreement, once I get the briefing

7   on that issue, along with your updated status reports, I may

8   make a decision and say, no, you don't get it or, yes, you do.

9           MR. NEWMAN:  Thank you.

10          THE COURT:  And if we have to, we'll cross that

11  bridge when I see some updated authorities and argument.

12          MR. NEWMAN:  Thank you.

13          THE COURT:  I'm going to leave you in the

14  courtroom -- no.  As a matter of fact, given the numbers of you

15  and the fact that I'm going to have this room start filling up

16  pretty soon with people, I'm going to ask you to retire and

17  deliberate in the jury room, which is right through these

18  doors.

19          And, Mr. Patterson, if you'll make sure there's

20  nobody else in the jury room and it's available to these

21  counsel, that they have it on an undisturbed basis for at least

22  an hour.  If they want to stay all afternoon, if they're making

23  progress, I want them to be able to stay, but I want them to be

24  here at least until 1:00 o'clock.

25          All right.  Other questions?  I'll look forward to

1    your updated briefing and we'll go forward as we need to.  This

2    hearing has been completed at least for purpose of the status

3    conference and the Court stands in recess.  You're excused,

4    counsel.

5            COURT SECURITY OFFICER:  All rise.

6

7            (Hearing concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         CERTIFICATION

2              I HEREBY CERTIFY that the foregoing is a true and

3      correct transcript from the stenographic notes of the

4      proceedings in the above-entitled matter to the best of my

5      ability.

6

7      _____        Date: 3/28/17
       Tammy L. Goolsby, CSR
8      Deputy Official Court Reporter
       State of Texas No.:  3101
9      Expiration Date:  12/31/18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017    44Index: $14.1..Aquino

**$**

**$14.1**  9:6 11:22
**$25**  19:9
**$3**  9:8 11:23
**$600**  6:13
**$69**  5:1 6:19 8:19

**0**

**08**  12:2
**09**  12:1,2

**1**

**10**  12:1,2
**137**  19:6 22:22
**13th**  4:6
**14**  38:13 39:14
**1:00**  41:24

**2**

**20**  36:9
**2000**  19:8,22 30:6
**2002**  20:11
**2005**  6:16 8:25 29:7
**2006**  8:15
**2007**  29:12
**2008**  11:24
**2009**  9:11 11:24
**2010**  9:11 11:24 20:18 29:7
**2011**  7:24 8:2,3,5 9:4,7 11:21,
22 12:15 17:14 20:20 21:3,6
26:9,19 27:11,15,23 28:6
35:8,9 36:25 37:6 40:12 41:2
**2012**  4:23 8:22 9:7 11:22
12:15 17:23 21:11
**2013**  11:23 30:6,13
**2014**  22:17

**2015**  22:19 26:14 34:24
**2016**  22:19

**3**

**30**  39:21

**4**

**48**  15:11 16:24

**5**

**5:12-CV-119**  3:7

**6**

**60**  39:21
**600**  9:19
**69**  27:6

**7**

**70**  34:13 38:22

**9**

**988**  19:7 22:22

**A**

**ability**  41:3
**Absolutely**  10:19
**abundantly**  31:13
**account**  25:15,16 29:6,9,17,
21
**accountants**  23:9 40:24
**accounting**  29:24
**accounts**  24:16 25:22 29:18
**accrued**  27:22
**act**  16:9
**acting**  15:14,15 17:6
**action**  3:6 28:22

**active**  31:3
**activities**  11:1
**actual**  35:23
**add**  11:6
**addition**  5:13 15:14 38:4
**additional**  29:13
**address**  40:15
**addressed**  4:6
**adequate**  7:6
**administrator**  5:11,23 12:10
15:14 16:10 17:7
**advices**  5:9
**affirmed**  4:25 21:13
**afternoon**  37:10 41:22
**agent**  16:10 23:25
**agree**  16:21 18:1 34:2 36:8
**agreement**  6:16 8:11,20
16:23
**agreements**  6:17 8:8,12,13,
14,16 9:12 20:14,18 21:8
**ahead**  16:11
**aide**  10:16
**aimed**  16:15
**allegations**  27:7 36:16
**allowing**  26:6
**amount**  5:2 6:18 14:16 17:7,8
25:19,20 34:25 35:6
**and/or**  40:17
**angst**  39:4
**announcements**  3:8
**answering**  38:22
**answers**  30:14
**apologize**  34:20
**appeal**  21:13
**appellate**  4:25
**apples**  8:23
**applications**  19:18
**Aquino**  3:13

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017   45Index: archive..chose

**archive** 19:11

**area** 23:2

**arguably** 27:3

**argument** 18:23 41:11

**arguments** 18:2

**Arps** 3:11 20:12 24:10 39:2

**asbestos** 16:8

**asks** 7:9

**aspersions** 35:15

**asserted** 16:13

**assertion** 19:3

**asset** 31:1

**assets** 6:7 27:2,3,16 31:25

**assigned** 3:25 4:1

**assist** 5:8

**assisted** 33:11

**assume** 9:24 11:4 13:25 25:22 26:2 32:4

**attempt** 27:13

**attempts** 31:4

**attend** 23:15

**attention** 31:6 32:19 39:17

**attorney** 37:22

**attorney/client** 33:13,16

**attorneys** 6:3 8:6 25:20

**authorities** 41:11

**avoid** 27:13

**avoidable** 36:15

**aware** 17:25 25:16 26:10

---

**B**

**back** 4:22 6:16 7:19 8:14,25 11:25 13:23 17:2 23:19 27:9, 15 28:17 29:15 33:5 34:24 37:5

**background** 4:21 18:22 22:8

**backing** 19:4

**bacterial** 23:20

**Ballard** 19:5,13

**bank** 3:5 4:20 6:15 8:4,19 12:4 13:22 25:22

**banking** 5:16

**banks** 20:3,23 23:8 24:15

**based** 32:21

**basically** 34:22 35:2 38:7

**basis** 5:3 32:11 41:21

**Bates** 25:3,6 31:13 32:5

**battle** 39:2

**began** 20:10 25:6

**beginning** 31:11

**behalf** 3:9,19,21 20:16 25:5 26:13 28:22

**belief** 8:7

**believed** 28:18

**belong** 29:25

**benefit** 37:9,21,22

**bigger** 40:21

**biggest** 27:24

**bit** 18:21 36:24

**blacked** 32:10

**blank** 13:22 36:3 39:23

**blurred** 10:19

**blurring** 17:6

**board** 9:5 17:13,14,20,23 30:10 33:3,10,15 36:22

**Boca** 23:2

**boils** 7:22

**bond** 21:15

**bonuses** 17:16

**bridge** 41:11

**briefing** 24:7 26:17 29:15 34:23,24 38:11 39:16 40:14 41:6 42:1

**briefs** 37:12

**bring** 25:1

**bringing** 38:9

**broad** 6:1 27:15,17

**brought** 5:12 9:18 29:19 32:19 36:12

**building** 19:25

**built** 19:10

**bulk** 9:11 12:1

**bunch** 34:8

**burdensome** 28:21

**business** 13:4,23 22:7

---

**C**

**Cafe** 8:4,19

**calendar** 38:1,19

**call** 31:5 38:8,14

**called** 20:7 30:3 32:24

**calm** 36:18

**capital** 19:9,24

**card** 19:14

**case** 3:6 4:7,21 7:8,10 12:24 25:9 26:17 33:7

**cases** 5:11 6:12 20:11

**cash** 12:6

**catch** 36:11

**caused** 8:16

**center** 19:10,25

**centralized** 29:20

**CEO** 30:24

**cetera** 31:1

**CFO** 30:6,11,22

**changed** 29:8

**Chase** 3:5,9 4:20,24 14:7 20:4,15 24:8 27:11 30:17 39:23

**Chase's** 10:16

**check** 6:11 13:22 29:6 36:3 39:23

**chief** 10:5

**chose** 30:17

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2016   Index: chronological..date

**chronological** 26:4

**Circuit** 21:13

**civil** 3:6 37:10

**claim** 5:23 17:20 20:22 27:10
  29:3

**claimed** 20:25

**claiming** 17:22

**claims** 5:10 12:10 15:14
  16:10 17:7 19:3 23:12 27:6

**clarify** 9:16 22:3

**clarity** 24:23 32:20

**Claudio** 19:5,13,17

**clause** 21:5,9 26:11

**clear** 4:1 14:23 15:3 18:4
  25:3,10 31:13 36:2,13

**client** 9:21 10:25 12:21 13:2,
  25 14:15,17 15:13 29:22
  31:19

**client's** 25:13

**clients** 20:1 25:17

**close** 6:12

**closed** 22:25

**clouded** 39:6

**cloudy** 38:25

**clue** 32:11

**collected** 21:24

**comments** 16:11

**communications** 24:1,17

**companies** 17:6 19:20,24

**company** 6:8 9:8 17:8 20:5,7
  24:4,16 32:24,25

**comparable** 8:15

**Compel** 3:4 37:15

**compensation** 17:15 32:18
  33:4

**completed** 42:2

**completely** 10:19

**complications** 23:17

**comply** 7:15

**conceivable** 29:1

**concept** 18:23 21:18

**concerned** 12:25

**concerns** 4:3

**concluded** 42:7

**conduct** 22:7

**confer** 37:20,24 40:11 41:5

**conference** 3:4 37:23 42:3

**conferences** 37:10

**conferred** 39:15

**confirm** 13:15

**confused** 36:24

**considerable** 3:24

**conspiracy** 20:24

**consuming** 28:21

**control** 11:13 23:6,23 24:23

**cooperation** 36:19

**copies** 12:5 20:13

**corporation** 3:6,20 4:22
  11:15 18:17 19:2,9,21 20:13,
  16,21 21:3 23:5 24:2,25
  25:10,21 27:4 28:23 30:8
  31:15,25 32:24

**correct** 35:12

**correspondence** 24:6 31:13

**counsel** 3:23 5:10,24 15:23
  20:12 22:1 23:3 24:24 27:21
  33:11,12 35:15,18 41:21 42:4

**counsel's** 22:10

**counsels** 35:4

**counting** 20:1

**couple** 33:23

**court** 3:2,3,16,22 4:12 5:5,7,
  18 7:9,19 8:3 9:14,16,24 10:9,
  15,22,24 11:20 12:18,19 13:8,
  11 14:4 15:6,17,19,23,25
  16:3,6 17:2,4,24 18:9,11,22
  20:19 21:25 22:3 23:18 24:7
  25:16 26:1,19 27:20 28:4,9,
  12,16,17 29:17,23 30:16,21
  31:5,11 32:3,4 33:17,20,21
  34:13,16 35:17,25 36:6 37:12,

17 38:8 39:17 40:13,21 41:2,
  5,10,13 42:3,5

**Court's** 15:8 16:21 31:6
  39:17

**courthouse** 37:23

**courtroom** 4:19 20:18 37:21
  41:14

**covered** 18:7 26:6 31:6,9
  33:13

**CPA** 23:10 31:3

**create** 13:23 20:7

**created** 19:5 30:12

**credit** 19:14

**creditor** 4:24 5:8 8:24 12:25
  27:25 40:3

**creditor's** 12:21 37:4

**critical** 35:3

**cross** 41:10

**crossed** 37:7

**custodian** 5:15,24 15:15

**Cutler** 3:19

- - -

**D**

**Dallas** 23:9,10

**Daniel** 3:11

**Darby** 3:10

**data** 19:10,25

**Datatreasury** 3:6,19 4:22
  5:20,21,24,25 6:2,3,17,24
  7:14,17,21 8:6,7,10,17 9:5,18,
  25 10:2,18 11:3,6,10,15 12:6
  16:13,22,23 17:20 18:17 19:2,
  4,9 20:5,9,10,21,23 21:3,5,7,9
  22:4,11,14,19 23:5,12 24:2,6,
  8,14,15,20,25 25:10,12,15,21,
  23 26:10,23 27:4,10,14,22
  28:6,23 29:19 31:15 33:13
  36:15,20 40:1,17

**Datatreasury's** 5:15 10:5
  18:23 21:19 22:17,23 23:9
  24:15 30:6 31:23 37:5

**date** 8:3,5,22 11:21 21:6
  22:18 26:10,19 27:12 36:12

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017   47Index: dates..enabling

37:3 38:1,10,19 40:12,16 41:2

**dates** 29:6

**days** 39:21

**dealing** 6:8 41:1

**debt** 28:21

**debtor** 5:9 13:12 29:2

**decades** 16:8

**decided** 27:9 34:6

**decision** 21:14 41:8

**declared** 9:5,11 22:23 31:25

**defend** 23:12

**Defendant** 3:17 4:13 11:7 12:24 18:13

**Defendant's** 12:24

**Defendants** 20:12

**defense** 7:11

**definition** 6:2

**definitions** 6:1

**defraud** 20:24

**deliberate** 41:17

**Delucia** 10:6 21:21,22,23 30:24

**Delucia's** 21:23

**demand** 5:20,25 16:14

**demanded** 21:2

**demanding** 21:4

**demands** 7:15

**demarkation** 8:1

**denied** 21:15

**department** 29:24

**depending** 34:19

**depose** 30:17

**deposed** 38:2

**deposition** 21:21 24:19,22 25:22 30:4,14,17 38:3 39:18

**depositions** 27:8

**Derek** 3:18 18:16

**develop** 40:5

**device** 5:21 17:2

**devices** 5:19

**difficult** 32:1

**dig** 19:16

**digging** 31:16

**digital** 10:14

**directly** 24:12 31:4

**director** 33:10,15

**directors** 17:11

**disagreement** 15:7 41:6

**disbursed** 9:6 11:3 26:23 29:20

**disbursement** 28:5

**disbursements** 12:11

**disbursing** 16:10

**discharge** 13:3

**discharged** 11:8

**disclosure** 28:4

**disclosures** 26:22

**discovery** 5:9 7:15 10:16 16:20 17:1 21:16 27:1,18 37:18 38:2

**discreet** 35:21

**discussed** 20:19 37:25

**discussion** 34:3

**Dismiss** 37:16

**dispersement** 13:5

**dispute** 26:11

**disputes** 14:22 18:2 36:4,6 40:5

**dissipate** 39:8

**distance** 22:13

**distinction** 10:3 36:13

**distinguish** 10:17

**distributed** 11:9 13:16

**distributing** 9:8

**distribution** 25:18 26:21

**distributions** 16:19

**distrust** 39:4

**dividend** 9:5,6,7 11:22,23

**dividends** 9:10

**division** 17:25

**Doan** 3:10,13,15

**doctors** 23:18

**document** 5:19,25 15:16,22 16:13 19:18

**documents** 5:15,16,22 6:4,5, 6,25 7:7,24 10:7,9,10,12,14 17:18 18:20,24 19:12 21:19, 23 23:6,13,23,24 24:14,21,24 25:2,7,11 28:24 30:2,5,11,25 31:10 32:5,10,15,16,22 33:2 34:25 35:6,7,13,21,23

**dollars** 9:19 14:19 17:11 28:1

**doors** 41:18

**Douglass** 3:20

**draw** 8:1

**drip** 7:5,6

**DTC** 8:6,24 10:7 12:12 25:9 35:10,22,24

**DTC's** 10:5

**Duke** 20:22

─────────

**E**

─────────

**earlier** 3:25 7:24 17:24

**earliest** 27:10

**early** 19:22

**earned** 16:24 28:5

**easel** 11:19

**East** 16:8

**economics** 8:13

**effectively** 37:17 41:3

**effort** 16:18

**electronic** 10:12 19:17

**electronics** 5:16

**emails** 10:13

**enabling** 7:16

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017  Index: encapsulated..Gilliland

encapsulated 19:6

encompass 6:1

end 17:14 30:6

enforce 5:8 7:19 37:15 40:4

enforceable 40:3

enforcement 27:23

enforcing 10:16

enter 6:15 8:12

entered 5:18 8:8,11,18 9:12

entities 32:15,17

entitled 9:13 14:14 37:4

entity 11:14 13:13

escapes 24:5

essentially 5:7 6:3 12:15

evaluate 17:19

exact 22:18

exceed 39:14

Excellent 4:18

excerpt 21:20

excerpts 17:9

excess 6:13

excused 42:3

executive 10:6 17:15

exist 30:13

existed 32:25

exists 11:11

expect 23:11 32:16 36:6 40:6

expedition 13:21 36:4 39:24

expense 25:20

expenses 11:4 14:16

experience 38:24

expert 8:15 17:15 32:17

explain 5:6 7:8 22:14

explained 5:13 29:15

extent 28:23 40:4 41:5

## F

facilitate 4:12 7:10

facilities 22:20

fact 41:14,15

fairly 4:2 34:25

false 19:2 21:20 22:11

familiar 16:7

fast 20:20

faucet 7:5

fault 36:10

favorable 8:9

favored 21:5,8 26:11

fees 11:5 14:16

fell 35:2

felt 27:5

figure 29:13 30:15 35:5

file 10:21

filed 21:10 26:17

files 10:12,14 31:17 39:24

filing 21:2

filling 41:15

filtered 25:15

final 21:16

finances 31:23

financial 6:5 9:1 12:12 19:1,
11,12

find 13:14 14:18 24:20

fine 18:10

finish 16:11

firm 3:13 4:20 5:23 9:21 10:25
12:25 13:1 14:4,16 15:13,15
16:9,19 17:6 18:19,20 19:2
20:10 23:10,12 24:10 26:13
28:22 29:7,18 31:14 34:14
40:25

firm's 13:4,11,23 14:12 25:17
31:17

fishing 13:21 36:4 39:24

flat 30:13

Florida 23:2

flow 16:15 29:20

flowed 17:8

focus 38:16

focused 36:17

focusing 11:22

follow 34:18 39:22

fork 18:5,6,11 36:14,19

formed 19:5

forms 10:14

forward 12:22 13:16 14:6,18
20:20 26:3,10 37:18 39:8,22
41:3,25 42:1

found 33:4

frame 12:15

fraudulent 27:7

freestanding 13:13

fresh 29:15

front 18:4

full 12:5 37:9

funds 25:16 28:5 29:22,25

furniture 23:1

## G

gap 26:5,6

gather 28:23

gathered 21:24

gave 10:7 12:14,15,16

general 12:14 17:9,16 23:3
33:11,12

generally 4:17

generate 13:24

generated 6:12,18 9:19 11:1

gentleman 20:22 38:20
39:18

gentlemen 37:9

Gilliland 3:18 18:16 22:2,16
24:13 26:8,24 28:7,10,19

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017   49Index: give..judgment

29:21,24 30:19,23 31:8 32:13
33:18,20 40:9

**give**  6:4 7:23 12:17 14:11
22:8,12 36:3 40:14

**giving**  8:2 38:21

**good**  3:12 4:18

**granted**  21:12

**gross**  14:15 25:19

**guidance**  30:10

**guy**  19:14 34:5

_____

**H**

**Hahn**  3:13 4:20

**handled**  11:10 13:18 23:4

**handling**  18:25

**hands**  31:24 37:5

**happen**  37:8

**happened**  11:9

**happy**  31:10,22 32:14,21
33:1,8,18 38:18 39:22

**hard**  36:25 37:6

**healthy**  38:21

**hear**  4:15 18:13 27:20

**hearing**  3:4 23:15 34:1,11,17,
18 38:18 42:2,7

**hearings**  34:18

**heart**  23:16 38:20

**held**  11:14

**Hessen**  3:14,15 4:20

**hidden**  13:18

**hide**  40:1

**high**  4:17 13:20 14:20,24
17:25 39:11

**highlighted**  32:17

**highly**  38:25

**historically**  19:4

**history**  4:17

**hold**  26:17

**honest**  37:1

**honestly**  32:9

**Honor**  3:10,12,18 4:19 6:13
7:8,9 10:4 11:19 15:5 16:2,12
17:13 18:16 22:16 23:16 25:1
26:8,25 28:7 29:6 31:9 32:13
33:23 34:9,20 40:8,9

**Honor's**  12:3

**hopes**  14:19 36:17

**hospital**  23:19 34:7

**hour**  37:20 41:22

**hundreds**  24:3

**hunt**  33:5

_____

**I**

**idea**  10:21 18:23 19:13,17
20:24 22:13 25:2 32:11,25

**identified**  17:16 23:25 24:15,
16 25:7

**identify**  27:2,16

**imaging**  6:11

**impeded**  41:3

**improper**  28:3,15

**include**  6:5 27:3 40:11

**includes**  6:2

**including**  20:12

**indemnity**  20:22 21:3,4

**independent**  11:14

**indication**  32:7

**individual**  24:3,20,22

**industry**  19:11

**infection**  23:21

**inform**  8:7

**information**  9:1 16:22 24:11
26:7,9,12 31:23 36:14 38:21
39:19

**infringement**  19:3 20:8

**inquiries**  5:9

**inquiry**  12:23 16:17

**insolvent**  12:6

**intend**  36:3

**intended**  13:22

**intentions**  4:4

**interest**  20:25

**interested**  6:20 27:24

**internal**  25:14

**interpreted**  21:8,9 26:12

**interrogatories**  15:22 24:1,
18

**interrogatory**  5:21,25 16:14

**interrupt**  15:25 16:3 21:25

**invalid**  22:23 31:25

**invention**  19:5

**investigate**  29:13

**investors**  35:23

**involved**  20:16 30:20

**involving**  31:21

**IOLTA**  25:14,16 29:5,8,17,18,
21 35:7

**irrelevant**  28:20

**issue**  17:2 19:15 21:18 27:19
29:5,13 33:16 37:14,17 40:13,
15 41:1,7

**issued**  19:8,19

**issues**  4:11 5:4 7:23 14:22
30:1 31:21,22 37:25 38:10,16,
20,24 39:16 40:22

_____

**J**

**Johnson**  3:20 18:18 33:21,23
34:20 38:22 40:8

**JP**  3:5,9 4:20,23 5:18 6:3,15
7:9 8:5,7,11 20:4 24:7 27:11

**JPMC**  19:21 20:12,21 21:2,7
27:13 31:16

**judge**  4:6,7 5:7 15:21 18:8
21:11,14 36:10 40:10

**judgment**  4:23,24 5:1,8,9,18
6:19 8:18,24 10:17 11:8 12:7
13:3,12,19 14:20 21:11,12,16

27:2 29:2 30:18 36:22 40:3

**judgments**  16:24

**July**  23:16

**June**  7:24 8:2,3,5 11:21 21:3
23:16 26:9,14,19 27:11 40:12
41:2

**jurisdictions**  41:1

**jury**  37:22 41:17,20

**justifiable**  28:16

**justifiably**  27:24

**justification**  14:11 15:2 26:6
39:25

**justify**  13:5

---

**K**

**Keith**  10:6 21:21

**key**  22:22 31:25

**keyed**  21:6

**kind**  7:4 14:24 26:7,21 28:4
35:2 40:16

**knowing**  12:21

**knowledgeable**  25:24

---

**L**

**Lane**  23:3,14,15,23 25:24
30:9,19 34:4,6,12 38:1

**Lane's**  34:7

**large**  32:10 34:25

**largely**  32:6

**law**  3:13 9:21 10:25 12:24
13:1,4,11,23 14:4,12,16
15:13,15 16:9,19 18:19,20
19:2 20:10 22:6 23:12 24:10
40:4

**lawsuit**  4:22 21:2,10 22:22

**lawsuits**  11:4,5 29:19

**lawyers**  12:9,12 20:15

**leave**  41:13

**led**  11:17 19:18

**ledger**  12:14 17:16 25:14

**ledgers**  17:10

**left**  23:4 36:21 39:20

**legal**  10:14 11:5

**legitimate**  14:20

**length**  3:24

**letter**  4:6 21:4 23:17 27:11

**level**  4:17 12:23 13:20 14:7,8,
10,20,24,25 15:2 17:3,25
39:11

**levels**  39:4

**license**  6:16 8:8

**licensee**  21:5,8 26:11

**list**  31:1

**litigation**  4:17 5:3,4,14 9:18
10:1,10 11:1 13:13,25 16:8
20:9,14,17 21:24 25:20 33:12

**LLP**  3:15

**location**  6:7 22:5

**log**  17:21 32:7,14 33:9,19

**long**  29:16 37:3 39:3

**looked**  20:3,4

**lot**  18:2 24:23 30:5,11,14
35:1,4,13 36:8 38:11

---

**M**

**made**  7:2 9:7 13:5 17:17 25:3,
6 31:12 33:10,14 35:11,22,23

**magic**  26:20

**maintain**  22:4 29:8

**maintained**  23:11 24:16
30:11 31:12

**maintains**  24:1,5,17 25:16

**major**  17:16

**majority**  19:25 27:21

**make**  7:5 10:3 12:11 14:23
18:5 34:11,22 36:2,13 39:8,12
41:8,19

**making**  20:1 26:21 41:22

**manages**  24:5

**market**  8:13

**master**  29:17,21

**material**  5:4

**matter**  14:6 27:18 31:9,17,18
33:22 34:17 41:14

**matters**  4:3 31:6 33:12 37:10

**Mayerfeld**  3:11 21:22

**Mcconnico**  3:21

**meet**  37:19,24 40:11 41:5

**meeting**  33:3,10,15

**mention**  17:14

**mentioned**  16:18 17:5,25
30:12

**met**  39:15

**method**  25:4

**million**  5:1 6:13,14,19 8:19
9:6,8,19 11:22,23 19:9

**millions**  17:11

**mind**  25:1 32:23

**minimal**  22:18 32:1

**minute**  10:9 21:25

**minutes**  17:13,14,20,23 33:3,
10,15

**mixing**  8:23

**moment**  5:6 11:19 24:5

**money**  6:18,20 11:9 12:1,3,9,
17,22 13:1,2,8,17 14:2 17:7
19:19 20:1,24 27:25 29:20
37:2

**monies**  9:2 16:15 27:22

**months**  36:9

**Morgan**  3:5,9 4:20,23 5:18
6:3,15 7:9 8:6,11 20:4 24:8
27:11

**Morgan's**  8:7

**morning**  3:12 4:18 34:18

**motion**  21:14 37:15,16

**motions**  3:4,5,23 4:5 7:7,25
21:12

**Mount**  23:19

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2015

**move** 41:3

**moving** 4:9

**multiple** 7:2 20:11 34:18 41:1

**N**

**NA** 3:5

**named** 20:22

**necessarily** 27:16 36:10

**needed** 4:1 35:5

**net** 11:3 14:15 25:21 28:5 31:19

**Newman** 3:11,12,14 4:15,18, 20 8:5 9:15 10:11 11:16 13:10 15:5,7,18,21,24 16:2,5,12 17:5 18:8,10,15 30:12 36:1 40:10,19,23 41:9,12

**Newman's** 4:6 32:3

**NEWTON** 9:23 10:4,19,23 11:21 13:7 14:3

**nickels** 28:1

**Nix** 3:19,21 5:13,17,22 6:1,4, 22,24 7:1,14,16,21 8:17 9:22 10:3,7,11,17 11:4,5,13 12:8, 10 13:15 15:10,12 16:14,16, 19,23 18:17,19,24,25 21:19 22:6,10,13 24:24,25 25:5,8,13 29:18 35:6 36:15 39:2,24 40:1,17

**noise** 7:6

**non-parties** 41:4

**noted** 31:11

**notice** 21:7 27:10 28:20 29:3

**noticed** 30:4

**notify** 8:11,25

**November** 21:11

**NPR** 25:7 34:24

**number** 6:22,23 14:21 25:3 35:21

**numbering** 31:14 32:5

**numbers** 25:6 41:14

**O**

**oath** 30:15

**objected** 35:20

**obligation** 8:10,25 27:13,14

**obsolete** 34:23 36:9 38:12 39:16

**occurred** 34:24 35:9

**occurrences** 28:25

**occurring** 9:2

**October** 4:6 8:22

**office** 22:25

**officer** 3:2 10:6 42:5

**offices** 22:6,19

**ongoing** 20:14,17

**open** 14:23 15:1 20:19 35:21

**operate** 22:6

**operating** 9:24 11:14

**operation** 22:24

**operations** 9:25 22:17 23:4 32:1

**opportunity** 40:4

**oranges** 8:23

**order** 7:13,16,19 28:4 35:18

**orders** 7:13

**ordinarily** 12:19 13:12

**ordinary** 9:24

**original** 23:20

**originally** 33:25 34:2

**out-of-date** 38:10

**overcharged** 13:1

**overhead** 14:17

**overlap** 10:25

**overseen** 30:9

**overview** 4:10

**ownership** 20:25

**P**

**pages** 38:13 39:14

**paid** 9:6 11:7 13:6 25:20 26:22 27:22

**paper** 10:20

**part** 13:24 16:18 20:14 27:1 28:11 29:2 36:16 40:10

**partially** 13:3 32:6

**participation** 33:22

**parties** 36:7

**parties'** 4:3

**parts** 26:24

**party** 8:8,12 28:22

**passed** 20:6

**patent** 5:11 19:3,7,18 20:8

**patently** 19:1 21:20 22:11

**patents** 6:9,10,11 19:6,8,13, 19 20:25 21:1 22:21,22 27:23

**Patterson** 3:19,21 5:13,17,23 6:2,4,22,24,25 7:1,14,16,21 8:17 9:22 10:3,8,12,18 11:4,6, 13 12:8,10,11 13:15 15:10,12 16:14,16,19,23 18:17,19,24, 25 21:19 22:6,11,14 24:25 25:6,8,13 29:18 35:6 39:2 40:1,17 41:19

**Patterson's** 36:16 39:24

**payments** 16:24 17:19 28:5 35:11

**pending** 3:23 4:5 33:12

**penny** 13:6

**people** 39:2 41:16

**percent** 15:11 16:24 34:13 38:22

**perfectly** 14:20 17:24

**period** 19:22 26:9,18 29:7,12

**periods** 29:4

**permission** 25:14

**person** 25:24 30:15,16 34:12

**perspective** 4:12 9:4 15:9

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017   Index: petition..recoveries

16:22

**petition** 21:15

**physical** 10:14 22:4,19

**pitched** 19:20

**pizza** 19:14

**place** 27:23

**places** 16:9

**Plaintiff** 3:9 4:10,14 9:19 13:12 23:8 36:3

**Plaintiff's** 22:9 27:21 35:15

**planning** 34:1

**Plano** 22:20,25 23:2

**pocket** 13:11

**podium** 4:15 36:1

**point** 6:19 7:21 9:16 11:2 12:25 18:12 25:1 26:2 30:8 34:22 41:6

**portions** 32:10

**position** 15:13

**possession** 9:22 10:1,2 11:13

**possibly** 29:3

**post-judgment** 5:8 27:1,18

**posture** 9:18

**potential** 28:20 35:23

**potentially** 28:14

**potholes** 18:11

**practical** 29:5

**practice** 31:3

**precisely** 24:10

**prefix** 25:10

**prerogative** 15:25 16:1

**presence** 22:5

**present** 11:23 35:19

**presented** 35:8,10,11,12

**pretty** 4:1 41:16

**prevented** 40:23

**principal** 5:1,10 6:19 7:23

**principle** 6:10

**prior** 13:12 21:7 26:20 28:6 30:22 36:25

**privilege** 17:21,22 31:22 32:7,14 33:9,14,16,19

**privileged** 39:10

**pro** 28:16

**problem** 7:4 13:20,21 29:14

**problems** 14:22

**process** 22:23 39:7,22

**processes** 4:25 25:25

**processing** 6:11

**produce** 33:5

**produced** 6:23 23:8 25:5,7,9 34:24 38:3 39:9,10 40:2

**produces** 17:21

**producing** 32:4

**production** 26:15 31:13 33:6

**productions** 6:23 7:3

**productive** 36:19 38:3

**Professional** 31:21

**progress** 39:7,13 41:23

**prohibited** 28:16

**prompted** 19:17

**proper** 36:5 40:2

**properly** 13:17 39:10

**properness** 40:15

**propriety** 40:15

**prosecution** 5:11 6:12

**provide** 31:10,22 32:14 33:8, 18

**provided** 25:8,14,18 26:1,2, 5,9,12,13 35:6,22

**pull** 13:8

**pulled** 20:8

**pun** 13:22

**purpose** 14:12 42:2

**purposes** 10:16 19:3 22:3

**pursue** 14:10 30:17

**pursued** 36:20

**pursuing** 36:14,19

**pursuit** 14:7,8,10,24 15:2

**put** 9:4 15:12 23:1,16

---

**Q**

**question** 9:16 12:3 29:16 32:24,25 40:10

**questions** 23:22 24:21 30:4 32:16,21,22 33:2 34:13 38:22 40:7 41:25

**quote** 10:11,13

---

**R**

**raised** 19:9,19,24

**raising** 21:4

**Raton** 23:2

**reading** 38:11

**ready** 4:16

**real** 13:20 15:2 39:7,13

**realized** 20:5

**reason** 12:18 17:5 20:21 26:16 27:15 33:14 37:4,7

**reasonable** 12:23 40:2,4

**reasons** 20:20 30:7

**receipts** 19:15 28:4

**received** 6:22 12:5 13:15 14:15,17 15:10 26:22 27:11

**receiving** 7:4

**recently** 23:7

**recess** 42:3

**record** 3:8 5:20 10:5

**records** 5:17,24 9:20,21,25 11:12 12:13 13:14 14:12 15:16 22:10,12 23:11 31:17 40:2 41:4

**recover** 13:24

**recoveries** 11:1,2 13:6 16:11

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017

53Index: recovering..sides

**recovering**  14:19

**recovery**  11:3

**recreate**  29:9

**redacted**  32:6

**redaction**  32:7

**redactions**  32:8,12 33:8,10,
15

**refer**  19:6

**references**  33:4

**referred**  9:20

**refuse**  7:23

**regard**  9:17 10:25 22:11
33:22

**rehearing**  21:15

**related**  3:5 10:10 36:15

**relationships**  15:13

**relevant**  27:17 28:13 35:7
36:5

**relied**  8:19

**relying**  21:20

**removed**  25:19

**replaced**  23:20

**report**  8:15 17:15 32:18 33:4,
6 38:8,9,14 39:13

**reports**  33:11 41:7

**repository**  5:15 18:24 19:18

**represent**  13:22

**representations**  32:4

**representative**  8:20,22
25:23

**representatives**  20:4

**represented**  18:18 20:11,13
34:4

**representing**  20:10

**request**  6:1 16:13 35:1

**requests**  15:16,22

**required**  7:18 27:6,16

**reset**  34:11 39:21

**resides**  5:17

**resigned**  30:6,22

**resolve**  36:6 38:16 40:6

**resources**  36:17

**respect**  5:5 15:8

**respectfully**  35:14

**respond**  15:5

**response**  4:13 18:13 26:24
32:3,12 34:25 40:20

**responses**  31:12 32:2

**Responsibility**  31:21

**responsive**  35:19

**restaurant**  19:14

**result**  19:5 21:2

**resulted**  20:17 21:10,12

**retire**  41:16

**revenue**  15:11 16:16

**reviewed**  4:5,6

**rightfully**  14:5

**rise**  3:2 42:5

**Roach**  3:19,21 18:17,19,24,
25 21:19 24:25 25:6,8,13

**road**  18:5,6,11 36:14,19 39:21

**room**  36:2 37:9,22,23 41:15,
17,20

**roughly**  22:17

**royalties**  16:25

**Rule**  27:6

**Rules**  31:21

**run**  13:16

---

**S**

---

**sake**  18:22

**Sam**  3:20 18:18

**sand**  36:25 37:6

**satisfied**  14:1

**satisfy**  12:7 13:19 27:2 36:22

**save**  4:16

**scheduling**  37:10

**Schneider**  4:7 21:11,14

**Schroeder**  4:7

**scope**  26:4

**Scott**  3:20

**SCP**  20:8

**seated**  3:3

**SECURITY**  3:2 42:5

**seeking**  24:8

**selected**  7:22

**sell**  19:10

**sense**  34:11

**separate**  13:13 16:16 22:5,21
24:4 29:18,19

**separately**  10:1 18:18

**serve**  17:1 19:11

**served**  5:19 21:15

**service**  20:6

**services**  19:11,20

**serving**  5:10,23 12:8 40:24

**set**  3:3 8:13 34:2 37:10,12
38:18

**settled**  11:8 20:15

**settlement**  6:16 8:4,11 9:11
20:14 21:8 25:18 26:21 35:8,9

**settlements**  15:12 16:24

**Seville**  23:10

**shareholder**  24:1,17

**shareholders**  9:9 17:11 24:4
35:22,24

**sheet**  10:20

**Shelton**  40:25

**Shephard**  23:3 34:4,6,7,12

**shoebox**  19:15,16

**show**  7:7 25:19 39:25

**showing**  35:10

**shows**  12:5

**side**  39:14

**sides**  38:9,14,25 39:13

**signed** 8:21

**significant** 35:5

**significantly** 22:24

**simple** 7:10,12

**simply** 7:14 35:12

**Sinai** 23:19

**single** 8:2 35:9

**sir** 22:2

**sit** 33:1 35:1,4 37:11

**situation** 12:19 15:20

**Skadden** 3:11 20:12,16 24:10 39:1

**slowed** 22:24

**small** 12:16

**snapshot** 12:16

**software** 29:8

**sole** 11:13

**sort** 26:17

**sounds** 40:21

**sources** 24:9,11,13

**space** 22:13,14

**specifically** 23:22 30:3

**spent** 19:23,25

**spreadsheets** 35:10

**springs** 32:23

**stand** 29:11

**standpoint** 12:21

**stands** 42:3

**start** 4:13 16:18 31:16,20 38:21,24 39:6 41:15

**start-up** 19:23 20:5

**started** 4:22 16:7 19:10 21:22 36:13

**starting** 4:9

**State** 22:5

**statement** 22:10

**statements** 12:4,13 19:1 23:8 25:18 34:9 35:8

**status** 3:4 4:3 38:8,9,14 39:13 41:7 42:2

**stay** 41:22,23

**stayed** 20:16

**staying** 37:21 40:16

**Steve** 3:13

**stipulated** 4:23

**stock** 9:8

**stop** 35:25

**storage** 23:1

**storing** 19:14

**straight** 12:10

**structured** 22:7

**stuff** 34:5 36:9

**subject** 29:2 40:25

**sublevel** 14:21 18:2

**subpoena** 5:22 16:14 25:8 35:16,19,20 37:16

**subpoenaed** 18:20

**subpoenas** 40:24,25

**substantiating** 6:6

**sued** 20:23

**summary** 6:17 12:13 21:11

**sums** 27:24

**supplemented** 26:15

**support** 17:18

**supporting** 6:6

**surgery** 38:20

**surprise** 39:1

**surviving** 39:16

**suspect** 34:17

**suspicion** 36:15

**suspicious** 14:5 39:1,7

**sworn** 5:14

**system** 32:5

---

**T**

**talk** 31:3 37:11 38:4

**talked** 37:11

**talking** 16:7 28:24

**targeted** 37:18

**task** 28:21

**telling** 10:15 11:12 24:9

**terms** 8:9

**terribly** 15:19

**testified** 10:6,8,11

**testimony** 5:14

**Texas** 16:8 22:5 31:21

**thing** 8:2

**things** 26:2 30:20 32:2 33:24 39:6

**thought** 25:3 31:12

**thousand** 24:3

**threshold** 12:20 40:17

**throw** 35:15

**tied** 10:1

**time** 3:3,24 9:3 10:6 12:15 16:20 17:3 19:22 21:5 26:3,9 27:9,10 28:14,21 29:4,7,10,12 30:9 32:18 34:11

**timewise** 26:5

**today** 5:5,7 12:18 22:4 23:15, 21 34:1,2,6 37:25 38:11 39:3

**told** 14:6 26:4 27:21 28:12,15

**tons** 12:11

**total** 11:7

**trace** 12:22

**tracing** 13:17

**track** 29:25 32:21

**tracked** 29:22

**tracking** 13:17

**transaction** 8:14 19:16

**transactions** 9:2 19:1 25:15 29:25 30:9

JP MORGAN CHASE BANK, NA vs DATATREASURY CORPORATION
STATUS CONFERENCE AND MOTIONS HEARING,   on 03/27/2017    55Index: transfer..Zach

**transfer**  28:15

**transferred**  6:10

**transferring**  17:10

**transfers**  6:6 17:8,17,19
  24:21 27:7,12

**tremendous**  6:18

**trial**  20:17 33:11

**true**  8:9,16

**turn**  14:12

**turned**  31:1

**two-to-one**  21:14

**type**  4:13

**typical**  15:13

---

**U**

**ultimately**  4:23 20:17 21:13

**unaware**  21:7 27:14

**underlying**  5:3,14 33:7

**underpaid**  14:1

**understand**  5:16 6:12,20
  7:11 9:1,17,20 10:24 11:16
  15:1,11 16:3,15 18:5 30:7,23
  31:2 32:9 37:1,2

**understanding**  22:4 23:5
  30:5 33:9

**Understood**  40:8

**undisturbed**  41:21

**unfocused**  38:25 39:7

**unique**  15:12

**unknown**  11:24 16:9

**unlike**  15:13

**unquote**  10:13

**unusual**  15:19

**updated**  37:12 38:7,9 39:13
  40:14 41:7,11 42:1

---

**V**

**valuable**  6:9

**valve**  23:16,20

**vast**  27:21

**verify**  19:16

**versus**  3:5 31:14

**view**  7:10,11 37:17

**Viewpoint**  20:7,13,16

**void**  35:2

---

**W**

**Wait**  10:9

**wanted**  7:22 12:16 18:4

**waters**  36:18

**weeks**  39:14

**whereabouts**  30:21

**wide**  35:21

**Winn**  3:18

**words**  10:15

**work**  14:22 18:3 33:1

**working**  31:24 34:14

**write**  20:21

**wrong**  28:3

**wrote**  8:6 21:4

---

**Y**

**year**  3:25

**years**  28:25 37:2

**York**  23:13 30:23 31:2

---

**Z**

**Zaah**  32:24

**Zach**  3:11 4:19