# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 18-40043

———————

United States Court of Appeals
Fifth Circuit

**FILED**

August 23, 2019

Lyle W. Cayce
Clerk

JP MORGAN CHASE BANK, N.A.,

        Plaintiff - Appellant

v.

DATATREASURY CORPORATION,

        Defendant - Appellee

———————

Appeal from the United States District Court
for the Eastern District of Texas

———————

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Plaintiff-Appellant JP Morgan Chase Bank ("JMPC") appeals the district court's denial of its motion to compel certain post-judgment discovery. Finding no reversible error, we affirm.

## I. BACKGROUND

### A. The Underlying Case

The merits of the underlying case were resolved in a previous appeal which resulted in a published decision. *See JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006 (5th Cir. 2016) (hereinafter *JPMC*). Accordingly, we provide a summary of the merits only as necessary to understand the instant post-judgment dispute.

No. 18-40043

Defendant-Appellee DataTreasury Corporation ("DTC") used to hold several patents relating to electronic check-processing systems. *JPMC*, 823 F.3d at 1008. To enforce its patents, DTC sued several banks, including JPMC, for alleged willful infringement. *Id.* In 2005, JPMC was the first bank to settle with DTC. *Id.* As part of the settlement, JPMC entered a license agreement with DTC wherein JPMC was allowed unlimited use of DTC's patented check-processing systems for a total consideration of $70 million. *Id.* The agreement included a most-favored licensee ("MFL") provision which entitled JMPC "to the benefit of any and all more favorable terms with respect to" subsequent licenses granted by DTC to any other persons. *Id.* at 1009. The MFL clause also outlined notice requirements concerning how DTC was to notify JPMC each time DTC entered a new license agreement with more favorable terms. *Id.*

Over the course of several years, DTC entered numerous subsequent licensing agreements. *JPMC*, 823 F.3d at 1009. In November of 2012, JPMC filed suit against DTC, alleging DTC breached the MFL clause by failing to notify JPMC of the subsequent licenses, many of which "were granted on terms substantially more favorable than those afforded to JPMC." *Id.* Prior to trial, JPMC filed a motion for summary judgment specifically seeking the benefit of the more favorable terms granted to Cathay General Bancorp ("Cathay") on October 1, 2012, as well as the "other Subsequent Licenses." *See id.* Most notably, the Cathay agreement granted Cathay a license for a total consideration of $250,000. *Id.* DTC responded with its own motions for summary judgment, requesting summary judgment in its favor on its affirmative defenses and the applicability of the MFL clause, and requesting a finding of no breach as to certain claims. *Id.*

Because JPMC designated the Cathay license as the most favorable, the district court only considered the parties' claims with respect to that particular

No. 18-40043

license, granting JPMC's motion in part and denying DTC's motions. *See id.* at 1010. The district court determined that DTC breached the contract by failing to notify JPMC of the Cathay license in accordance with the MFL clause and that the broadly worded MFL clause gave JPMC the right to incorporate retroactively the more favorable terms of the Cathay license agreement.[1] *Id.* The district court also found DTC's affirmative defenses meritless, but again only considered them as they applied to the Cathay license. *Id.* On appeal, this court affirmed the district court's interpretation of the MFL agreement and the dismissal of DTC's affirmative defenses. *Id.* at 1008.

In the end, DTC was on the hook to JPMC for $69 million in damages. *Id.* at 1010.

## B. Post-Judgment Activity

Shortly after the district court entered the $69 million judgment in June 2015, JPMC issued discovery requests and a subpoena to DTC and its law firm Nix, Patterson & Roach, LLP ("NPR") regarding the location of DTC's assets.[2] JPMC's initial interrogatories and subpoena did not include a timeframe, and DTC objected that such extensive discovery requests were unduly burdensome and overbroad because they were not related to the period after execution of the Cathay license agreement. DTC explained it would respond, but it would limit its answers to information dating back to June 9, 2011, as that was the earliest date it could have had "notice of a potential claim by or obligation to JPMC" because that was the date DTC received a letter from JPMC "raising a

---

[1] DTC had argued the MFL clause applied only prospectively (JPMC would not be entitled to a refund of payments already made to DTC at the time of a subsequent, more favorable license) rather than retroactively (JPMC would be entitled to a refund of any payment already made to DTC over and above the more favorable price).

[2] While there was some discussion before the district court about the relationship between NPR and DTC for purposes of discovery, the parties' legal arguments on appeal do not distinguish between discovery requests issued to NPR and DTC. Because the distinction is immaterial for purposes of this appeal, we simply refer to them both as "DTC."

No. 18-40043

potential issue about the license between DTC and [JPMC]." DTC filed motions to quash and for protective orders, and JPMC filed a motion to compel.

The district court held a status conference on the motions in March 2017. JPMC explained at the hearing that it sought all of DTC's financial records because DTC had paid nothing on the judgment and was showing bank statements reflecting insolvency, despite having received nearly $600 million in revenue from various license agreements. The district court declined to rule on the issues at the hearing and directed the parties to meet and confer and file updated status reports. The parties met and conferred but could not resolve the issues. JPMC continued to want discovery dating back to January 2006—DTC's first alleged breach of the MFL clause—to help it uncover any fraudulent transfers or improper payments to shareholders. Negotiations stalled, and JPMC renewed its motion to compel, requesting an order overruling DTC's objections.

The district court ultimately sided with DTC. While the district court did not provide a detailed explanation for its ruling, the discovery order mentions June 2011 as the date DTC first had notice of JPMC's claim. It also asserts that JPMC relied on the 2012 Cathay agreement in its summary judgment motion and the judgment was based on that agreement. In light of these dates and the totality of the circumstances, the district court determined JPMC sought discovery into matters "well-before the appropriate time period and that [were] not relevant to the Judgment in this case." JPMC appealed.

## II. LEGAL STANDARD

### A. Standard of Review

We review a district court's denial of a discovery request for abuse of discretion. *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 278 (5th Cir. 2010). "A trial court enjoys wide discretion in determining the scope and effect of discovery, and it is therefore unusual to find an abuse of discretion in discovery matters."

No. 18-40043

*Equal Emp't Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (quoting *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (internal quotation marks omitted)). There is no difference between the standard of review of a pre-trial discovery order and that of a post-judgment discovery order. *See Mitchell v. Sizemore*, 536 F. App'x 443, 444 (5th Cir. 2013) (applying abuse of discretion standard to district court's denial of post-judgment discovery request); *United States v. McWhirter*, 376 F.2d 102, 106 (5th Cir. 1967) (finding the philosophy underlying the discovery provisions of the Federal Rules to apply "with equal force whether the information is sought in a pre-trial or in a post-judgment discovery proceeding"). A court abuses its discretion "when its decision is based on an erroneous view of the law." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011). Nevertheless, the district court's decision should be reversed only in "unusual and exceptional" cases, *O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 499 (5th Cir. 1985) (internal quotation marks omitted), such as where the decision is "arbitrary or clearly unreasonable." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000)). Even if a district court abuses its discretion, the reviewing court will not overturn its ruling unless it substantially affects the rights of the appellant. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 481 (5th Cir. 2018).

## B. Standard for Post-Judgment Discovery

Federal Rule of Civil Procedure 69(a)(2) allows a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." "Rule 69 was intended to establish an effective and efficient means of securing the execution of judgments." *McWhirter*, 376 F.2d at 106. "The scope of postjudgment discovery is very broad to permit a judgment creditor to

No. 18-40043

discover assets upon which execution may be made." *FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). To effectuate that purpose, the discovery rules are to be liberally construed. *McWhirter*, 376 F.2d at 106.

Nevertheless, "[t]he Federal Rules of Civil Procedure . . . permit the district court to limit discovery." *Mitchell*, 536 F. App'x at 444 (citing Fed. R. Civ. P. 26(b)(1) and (b)(2)(A), (C)). For instance, the discovery must be relevant to the purpose of obtaining information on hidden or concealed assets, including assets that may have been fraudulently transferred. *See* 13 James Wm. Moore et al., Moore's Federal Practice - Civil § 69.04 (2018) (citing *Caisson Corp. v. Cty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974)); 12 Charles Alan Wright et al., Federal Practice and Procedure Civil § 3014 (2d ed.) (updated 2018).

### III. DISCUSSION

JPMC alleges the district court abused its discretion by denying its request for discovery prior to June 2011. JPMC argues DTC accrued most of its patent-related revenue from 2006 to 2011, but has since dissipated the income, leaving JPMC with an "as yet" uncollectable judgment. According to JPMC, it was a creditor of DTC dating back to the first subsequent license agreement and breach in 2006, and therefore it should be entitled to financial discovery back to that date so it can determine if DTC made fraudulent transfers to avoid financial obligations to JPMC. DTC's counter-argument is simple—JPMC's judgment is based on the 2012 Cathay license agreement, and therefore discovery should be limited to that particular breach.

### A. DTC's Prior Breaches

#### 1. Notice of JPMC's Potential Claims

One of JPMC's main arguments is that the district court abused its discretion by erroneously finding DTC had no notice of any potential claim by JPMC until June 2011. JPMC argues, and it is essentially undisputed, that

No. 18-40043

DTC entered subsequent license agreements with more favorable price terms as early as January 2006. *See JPMC*, 823 F.3d at 1019. It is also undisputed that DTC did not give JPMC the benefit of any more favorable price terms, nor did it notify JPMC of the subsequent licenses as required by the MFL clause. Therefore, according to JPMC, the district court clearly erred when it found June 9, 2011 to be relevant to DTC's awareness of its breach and corresponding financial obligations to JPMC; DTC was aware of its own actions that constituted the breach, and it was these actions that prohibited JPMC from knowing of any breach and notifying DTC of a dispute earlier.

JPMC further urges that DTC cannot hide behind its interpretation of the MFL clause to allege it had no notice of potential claims by JPMC. Even under DTC's interpretation of the contract,[3] DTC would have known it breached the agreement each time it failed to notify JPMC of subsequent, more favorable licenses and to pass on the more favorable terms. Because DTC would have known of its potential financial obligations every time it accepted a new payment from JPMC, transfers made after 2006 could in theory have been a way to hide assets from a future claim by JPMC.

DTC repeats multiple times that it had no notice of JPMC's potential claims until 2011; however, it does not make any real argument on this point. We agree that the district court's reliance on the June 2011 date as relevant to DTC's knowledge of any potential claims by JPMC is clearly erroneous. Nevertheless, the district court also based its denial on the judgment itself and the "totality of the circumstances," so we find any weight the district court accorded the June 2011 date to be harmless.

---

[3] As a reminder, DTC argued the MFL clause only applied prospectively, meaning JPMC would not be entitled to reimbursement of any amount it had already paid DTC in excess of the value of the new license agreement.

7

No. 18-40043

## 2. The Judgment Itself

The next main point of contention between the parties is whether the judgment relates to all DTC's alleged breaches, or simply the 2012 Cathay agreement. DTC contends that the judgment, and JPMC's summary judgment motion upon which the judgment is based, only considered the 2012 Cathay agreement and breach. Therefore, post-judgment discovery should revolve around that agreement. In this regard, DTC notes that while the district court found DTC breached the MFL clause by not notifying JPMC of the 2012 Cathay license agreement, no court found DTC to have breached the MFL clause at any other point in time, and JPMC, a sophisticated party with sophisticated counsel, made a deliberate decision to narrow its summary judgment motion to the Cathay agreement. According to DTC, any other alleged breaches are irrelevant to JPMC's judgment, and JPMC should be barred from seeking relief based on additional breaches of the MFL clause by the doctrine of res judicata.

While we agree with DTC that the judgment only pertains to the 2012 agreement, DTC's characterization of JPMC's motion is not completely accurate. JPMC's summary judgment motion *did* in fact seek relief on the other licenses/breaches in addition to the Cathay license; however, JPMC noted that as to particular terms, it could only seek the benefit of one license. It therefore chose to focus on the Cathay license, although it mentioned the analysis in its motion applied equally to each more favorable term in the additional licenses. The district court acknowledged JPMC's admission and emphasized in its order that it was specifically limiting its consideration of JPMC's claims to the Cathay license.

In this vein, DTC points out that even if it had breached the MFL clause prior to the 2012 Cathay agreement, it raised affirmative defenses to those breaches which the district court did not consider. In fact, DTC contends JPMC's reason for limiting its summary judgment motion to the 2012 Cathay

8

No. 18-40043

agreement was "strategically" to avoid DTC's affirmative defenses. While the implied strength of DTC's affirmative defenses is probably overstated, JPMC did make a conscious choice to seek the benefit of the Cathay license agreement over other subsequent licenses. For instance, one of the licenses JPMC submitted in its summary judgment motion had a price term of $39,500, an even more favorable price term than the Cathay license. The license was entered into around the same time as the Cathay license, so it is unclear why JPMC chose not to seek the benefit of that license. It could easily have been because the license contained other less favorable terms, but perhaps it was because an affirmative defense applied to it. Even if it is unlikely DTC's affirmative defenses would have succeeded, we will never know for sure because DTC's affirmative defenses were only reviewed by the district court as to the 2012 breach.

Ultimately, while JPMC did ask the district court to make a finding of breach as to the other licenses, the district court declined, limiting its analysis to the Cathay license which then formed the basis for JPMC's judgment. In addition, even assuming the district court's order assumed or found other breaches of the MFL clause, the amount of the judgment is specifically tied to the Cathay license. While JPMC argues limiting the discovery to this agreement gives DTC the benefit of its other breaches, it is not clearly entitled to damages on those other breaches. It therefore would be reasonable for the district court to tie discovery to a time period associated with the Cathay agreement. Because that is what the district court chose to do, it did not abuse its discretion.

## B. Fraudulent Transfers

JPMC contends it deserves discovery dating back to 2006 so it can discover and understand the present location of DTC's funds, DTC's transfer of any monies, and whether any of the transfers are subject to avoidance

No. 18-40043

claims. DTC asserts that even if JPMC's allegations of fraudulent transfers had merit, Texas law would govern such a dispute, and Texas law defines a fraudulent transfer only as one where "the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred." DTC argues 2006 is not a reasonable time before JPMC's claim arose in 2012, while 2011 is. JPMC does not concede that Texas law applies,[4] but it does not dispute that a fraudulent transfer must occur within a reasonable time, either before or after, a creditor's claim arose. The real issue between the two parties here is *when* JPMC's claim arose.

"Creditor" under Texas law is defined as one who has a claim. Tex. Bus. & Com. Code § 24.002(4). "Claim" is defined as a right to payment, "whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code § 24.002(3). JPMC cites to cases showing that under Texas law, a claim for breach of contract accrues as soon as the contract is breached. *See Dell Comput. Corp. v. Rodriguez*, 390 F.3d 377, 391 (5th Cir. 2004)). It argues that, based on the district court's interpretation of the MFL clause, JPMC became a creditor of DTC each time DTC entered into a more favorable license and failed to give JPMC the benefit of the more favorable terms. While DTC may have had affirmative defenses to the breaches, at a minimum JPMC would have had a disputed claim of breach, making it a creditor prior to 2011.

DTC concedes discovery dating back to a year before or after a claim arises is reasonable and appropriate, but disputes that the earlier alleged breaches are the proper reference point for enforcing a judgment that is not

---

[4] JPMC briefly argues Delaware law might apply, as that is where DTC is incorporated; however, JPMC focuses its briefing on Texas law. Accordingly, we will limit our discussion to the fraudulent transfer laws of Texas.

No. 18-40043

based on those breaches, regardless of whether JPMC was a possible creditor of DTC prior to 2011. Even if the underlying lawsuit was based on those breaches, DTC argues JPMC chose to abandon those breaches in its motion for summary judgment and therefore the judgment, irrespective of the underlying lawsuit, is based solely on the 2012 agreement. As we noted above, JPMC did not exactly abandon its claims as to the other breaches in its motion for summary judgment; however, the district court limited its order to the 2012 breach and the amount of the judgment is specifically tied to that one breach.

While post-judgment discovery is broad, it is not without limits. *See Mitchell*, 536 F. App'x at 444. Even assuming DTC breached prior to 2012 and JPMC was a creditor within a year of those prior breaches, limiting the post-judgment discovery to the breach on which the judgment is based is reasonable, as Rule 69(a) refers to a *judgment* creditor, not the expansive definition of creditor under the Texas Business and Commerce Code. *See* Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the *judgment creditor* or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." (emphasis added)). Because it is reasonable, it was not an abuse of discretion to limit discovery as the district court did.

## C. Proportionality

Lastly, JPMC takes issue with the district court's ruling that discovery as far back as 2006 is not proportional to JPMC's $69 million judgment. DTC argues that the district court correctly limited discovery to post-June 2011 because such limitations are "proportional to the needs of the case."

Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

No. 18-40043

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). DTC asserts pre-2011 discovery has no relevance to the satisfaction of the judgment and would place a significant and undue burden and expense on a company that has few remaining resources. Because it has archived many of its documents, it would cost DTC approximately $110,000 to reload and host the documents, plus an additional $6,500 per month to maintain them. These costs are in addition to attorney time spent on reviewing 15 years' worth of litigation files, which DTC claims are unlikely to contain relevant financial documents. This is exceedingly burdensome to DTC in large part because DTC lost its principal source of revenue—enforcing its patents—when legislation passed (at the behest of banks like JPMC) that eventually led to the invalidation of DTC's patents in 2015.

JPMC responds that its requests were tailored to fund transfers, issuances of dividends, and revenue, and could be aided by search terms— meaning DTC would not need to peruse 15 years' worth of litigation files. While JPMC's requests are slightly broader than it intimates, JPMC points out that DTC voluntarily disclosed, in a one-page summary chart, dividend issuances of over $117 million to its chairman, CEO, and general counsel prior to 2011.[5] Lastly, JPMC claims DTC did not properly prove and verify[6] its alleged

---

[5] JPMC states only briefly that this shows DTC is not burdened by the pre-2011 discovery and that this disclosure may have waived DTC's right to object to pre-2011 discovery and demonstrates bad faith in DTC's objections. Because JPMC does not provide arguments on these points, they are waived. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

[6] DTC did submit an email quote explaining the cost of having its files "reloaded," and JPMC cites no case saying the district court could not have relied on such "unverified" evidence. The district court case JPMC did cite mentions affidavits, but it also allows a district court to consider other "evidence revealing the nature of the burden" on the party resisting discovery. *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014).

12

No. 18-40043

expense of reloading DTC's document database or how such discovery is burdensome to it. Even if it had, JPMC asserts, the cost to DTC "represents barely more than one-tenth of one percent of the $69 million (excluding interest) DTC owes JPMC" and represents even less of DTC's total revenue. JPMC argues this weighs heavily in its favor, although it does not offer to defray any of the cost of the discovery outside of reviewing the documents itself. JPMC contends the likelihood of it gaining financial information showing "a pattern of siphoning money to insiders and payments of unlawful dividends for which JPMC can recover from the transferees and DTC's directors" shows the likely benefit of discovery to JPMC "far outweighs" the cost to DTC.

Weighing the costs of discovery to DTC with the benefit to JPMC is the type of judgment call generally best left to the discretion of the district court. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery."). The district court's reference to proportionality was in the context of considering the judgment as based solely on the 2012 breach; considered in that light, pre-2011 discovery could reasonably be considered not proportional to the needs of the case.

## CONCLUSION

We conclude that the district court did not exceed its wide discretion. We therefore AFFIRM.